In re FINKELSTEIN et al. UNITED STATES et al. v. KAUFMAN. In re JONES & BAKER.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

Nos. 267, 338.

1. Bankruptcy ⬤⇒346—Income taxes assessed against individual partners have no priority over partnership creditors in partnership assets.

Under Revenue Act 1918, §§ 218 (a), 224 (Comp. St. Ann. Supp. 1919, §§ 6336⅛i, 6336⅛l), repealing Revenue Act 1917, tit. 2, § 201 (Comp. St. 1918, § 6338⅜b), and Bankruptcy Act, § 5f (Comp. St. § 9588), on bankruptcy of partnership, income taxes assessed against partner have no priority over partnership creditors as respects partnership assets, nor is there any equitable lien for such taxes which would require specific property to which to attach, notwithstanding section 64a (Comp. St. § 9548), and Rev. St. §§ 3186, 3466, 3467 (Comp. St. §§ 5908, 6372, 6373).

2. Internal revenue ⬤⇒26—Priority of taxes attribute of sovereignty.

Right of priority of United States in collection of taxes is attribute of sovereignty.

3. Bankruptcy ⬤⇒387—Composition with partnership creditors held not to affect provision for marshaling assets under Bankruptcy Act.

Composition between partnership and its creditors, without composition with creditors of individual partners before bankruptcy of partnership, held not to affect provisions for marshaling assets under Bankruptcy Act, § 5f (Comp. St. § 9588), in view of section 12, as amended by Act June 25, 1910 (Comp. St. § 9596); a composition, whether before or after adjudication, standing in same position as liquidation through trusteeship in bankruptcy.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Abraham Finkelstein and others, individually and as copartners trading as Finkelstein Bros., bankrupts. Proceeding on claim of Frank K. Bowers, Collector of Internal Revenue, for $11,-523.30, opposed by Henry H. Kaufman, trustee in bankruptcy. In the matter of Jones & Baker, alleged bankrupts. From decrees affirming orders of referee disallowing claims for income taxes against partnership assets, the United States appeals. Affirmed.

These two appeals were argued at the same time and will be disposed of in one opinion. In the Finkelstein case the District Court for the Southern District of New York affirmed the order of the referee in bankruptcy allowing the claim of Bowers, collector, against the individual assets of Finkelstein, but not against the partnership assets. The facts are sufficiently set forth in the opinion of Referee Townsend, which, because of its careful review of the question litigated, we quote infra.

In the Jones & Baker case, the District Court for the Southern District of New York reached the same conclusion on a different state of facts, in respect of which, however, there is no difference in principle from what was held in the Finkelstein case. The facts in the Jones & Baker case may be briefly stated.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jones & Baker was a partnership composed of two partners, William R. Jones and Jackson B. Sells, and was engaged in the stock brokerage business. On March 31, 1923, an involuntary bankruptcy proceeding was commenced against the firm in the District Court for the Southern District of New York and a receiver was appointed. An offer of composition in bankruptcy was made by the firm to the partnership customers and creditors, as distinguished from the creditors of the individual partners, which contemplated the valuing of all securities in the margin accounts at their value on May 31, 1923, and the payment to the partnership customers and creditors on the resulting credit balances of at least 90 per cent. in cash and securities as so valued. No offer of composition was made to the creditors of the individual partners. This offer of composition was confirmed by the District Court, and the receiver was directed to carry it into effect. Under the composition the creditors of the firm cannot by any possibility recover the full amount of their claims.

In July, 1923, more than one month after the appointment of the receiver, the government, upon a re-examination of the individual tax returns of the individual partners, for the years 1918, 1919 and 1920, assessed certain additional income taxes against Jones for $632,768.04 and Sells for $62,661.89. Separate claims for these amounts were thereupon filed with the receiver, both dated July 14, 1923, by the collector of internal revenue for the Second collection district of New York. These two claims were entitled in the bankruptcy proceedings and were specifically stated to be against the individuals. Subsequently separate amended claims in identical language were filed with the receiver for slightly reduced amounts.

As the result of negotiations, a formal stipulation was entered into under date of November 26, 1923, between the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, and Jones, by which the amount of his income tax liability for the years 1918, 1919 and 1920 was reduced to $273,739.07. Under the same date a similar stipulation was entered into with Sells, reducing his net additional income tax liability for the same years to $5,518.41. These stipulations were entered into separately with each partner, and each stipulation fully recites the facts relating to the individual assessment concerned.

The government, however, has endeavored in the bankruptcy proceeding to assert these claims as claims against the assets of the firm of Jones & Baker, collected and held by the receiver for the use and benefit of the creditors of the firm, and has endeavored to enforce the two claims as being entitled to payment out of the firm's assets prior to the customers and creditors of the firm. The opinion of the referee in the Finkelstein case follows:

"The collector's claim  *  *  *  asserts a claim against Abraham Finkelstein for an unpaid balance of income tax for the year 1919; the balance being stated at $11,523.30. Priority in payment before all claims, together with interest at 1 per cent. per month until paid, beginning January 22, 1922, is also asserted. The question of priority and of rate of interest will be reserved by the referee for the present.

"The entire income tax for the year 1919 asserted against Abraham Finkelstein is $15,364.40, of which he appears to have paid the installment, or one-fourth, normally falling due in March, 1920, at $3,841.10. The remaining three installments, or three-fourths, aggregating $11,523.30, form the basis of the present claim. On October 14, 1920, a petition in bankruptcy was filed against the partnership and the partners, upon which petition the three partners individually and as a partnership was adjudicated on April 1, 1921. It does not appear that the collector prior to the filing of the petition in bankruptcy in October, 1920, ever took any steps against Abraham Finkelstein to collect the unpaid installments of June 15, 1920, and September 15, 1920, either against the individual property of Abraham Finkelstein, including his interest in the partnership at that time.

"At the hearing it appeared that all the assets in the hands of the trustee in bankruptcy are partnership assets, and that the trustee has no assets otherwise the property of Abraham Finkelstein. It was conceded Abraham Finkelstein had a substantial interest in any surplus of partnership assets remain-

ing after paying partnership debts. It is, however, conceded that in this there is no surplus. At the hearing the government contended that the collector's claim was payable out of the. partnership assets prior to the payment of the general copartnership creditors.

"At the hearing the trustee contended that the government's claim was only payable out of any individual assets (of which in this case there were none) belonging to the individual estate of Abraham Finkelstein within subdivision 'f' of section 5 of the Bankruptcy Act (Comp. St. § 9588). In other words, the government's contention is that the tax assessed against Abraham Finkelstein should be paid out of the partnership assets prior to partnership creditors, the same as if the income tax had been assessed upon the partnership as an entity, as was the case under the Revenue Act of 1917. See. title 2, § 201 (Comp. St. 1918, § 6336⅜b), of that statute, which reads as follows: 'That in addition to the taxes under existing law and under this act there shall be levied, assessed, collected and paid for each taxable year upon the income of every corporation, partnership, or individual, a tax (hereinafter in this title referred to as the tax) equal to the following percentages' of the net income. * * *'

"It is to be noted that title 1 of the act of 1917 imposes an income tax upon the income of every individual, and that title 2 of the act imposes a graduated excess profits tax on a partnership as an entity. The Revenue Act of 1918, under which the present tax was imposed upon Abraham Finkelstein, was a departure from the plan of the Revenue Act of 1917 in not imposing a tax upon a partnership as an entity, but declaredly imposed the tax upon the partner in his individual capacity, and in respect .to the income, whether distributed or not, which he was entitled to receive from the partnership. The language of the statute is as follows:

" 'Sec. 218. (a) That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included· in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the fiscal or calendar year upon the basis of which the partner's net income is computed.' Comp. St. Ann. Supp. 1919, § 6336⅛i.

" 'Sec. 224. That every partnership shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowed by this title and shall include in the return the names and addresses of the individuals who would be entitled to share in the net income if distributed and the amount of the distributive share of each individual. The return shall be sworn to by any one of the partners.' Comp. St. Ann. Supp. 1919, § 6336⅛l.

"It is also to be noted that these sections are found in part II of the Revenue Act of 1918 entitled 'Part II—Individuals.' In my opinion the sovereign in the act quoted has publicly declared its claim against the taxpayer and that the language of the statute, viz. section 218 (a), impliedly, if not expressly, follows or adopts the rule of marshaling laid down in subdivision 'f' of section 5 of the Bankruptcy Act. Had the partnership remained solvent, and had the collector pursued Abraham Finkelstein for the unpaid income tax, the maximum right of the government, in my opinion, under the statute, would have been to pursue the individual assets of Abraham Finkelstein, and to have pursued the latter's interest in the partnership after its affairs were marshaled under the familiar rule.

"I find nothing in sections 3186 and 3466 or 3467 of the Revised Statutes of the United States (Comp. St. §§ 5908, 6372, 6373) which increases the res which the collector may seize. Those three sections read as follows:

" 'If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided until paid, with the interest, penalties, and costs that may

accrue in addition thereto upon all property and rights to property belonging to such person. * * *'

" 'Sec. 3466. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

" 'Sec. 3467. Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid.'

"Neither of these three sections attempts to define the assets of the taxpayer which are subject to seizure. In my opinion the insolvency of the partnership or the partner who is the taxpayer does not increase the rights of the government. In other words, I do not believe, because the partnership and the individual partners have become insolvent, that for that reason the government, to satisfy an unpaid tax imposed upon one partner as an individual, can seize all the assets of the partnership in advance of the creditors of the partnership. Non constat but that, had the government acted promptly in 1920, it might have secured from Abraham Finkelstein payment of at least two of the installments of the tax out of his individual assets, including his equity in the partnership.

"The fact that the government delayed collection until after such equity had disappeared, and any other assets of Abraham Finkelstein had also disappeared, affords no reason why the partnership assets, which otherwise would have belonged to the partnership creditors, should be now seized by the government to pay its claim against Abraham Finkelstein as an individual under section 218 (a) of the Revenue Act of 1918. I repeat that the present controversy cannot be decided correctly without constantly keeping in mind the text of sections 218 and 224 of the Revenue Act of 1918, quoted above.

"Congress having deliberately chosen the plan of taxation indicated in those sections instead of assessing the income of the partnership as an entity and making the tax thereby payable out of partnership assets in the first instance, in case of a failure, the collector is precluded from asserting the different rule here contended for by him, even if (as he points out) the statutory plan works (as here) to leave the partnership assets to the partnership creditors free from seizure to satisfy a tax imposed on one partner 'in his individual capacity.'

"I read the following cases as supporting the views expressed in this memorandum: U. S. v. Hack, 8 Pet. 271, 8 L. Ed. 941; U. S. v. Evans, Crabbe, 60, 25 Fed. Cas. 1033, No. 15,062. The collector relies on the following cases: In re Strassburger, 4 Woods, 557, 23 Fed. Cas. 224, No. 13,526; Lewis v. U. S., 92 U. S. 618, 23 L. Ed. 513.

"In the Strassburger Cases the United States had recovered a judgment on a whisky bond against both of the Strassburgers, who were partners in a whisky business, but who had each executed the bond in connection with that business in their individual capacities. It is evident to me that this feature was decisive of the case. The language at page 559 (23 Fed. Cas. 224) postponing the claims of partnership creditors as well as of separate creditors to the claims of the United States, must be read in connection with the limitation in the language of the opinion on page 558 (23 Fed. Cas. 224) beginning: 'When the United States have a claim against one member of a firm, and not against the other, its priority extends only to the interest of that member,' etc.

"I cannot read the Lewis Case as impairing the prior decision of the United States Supreme Court in U. S. v. Hack. The facts were as follows:

The United States had a claim against the partnership of Jay Cook, McCulloch & Co. of London, hereafter called the English firm. On November 26, 1873, the American firm became bankrupt, and Lewis was the trustee in bankruptcy. The United States asserted against the trustee in bankruptcy a claim against separate estates of the seven American partners in the American firm, they being partners in the English firm which was primarily the debtor to the United States.

"The Supreme Court merely decided that the United States, holding a claim primarily against the English partnership, was not bound to go into a foreign jurisdiction to assert that claim against that partnership before proceeding against the separate estates of the partners in this country, but could assert a claim against the separate estates of the partners so far as found in this country in the possession of Lewis, the trustee in bankruptcy of the American firm. The decision cannot, in my opinion, be read as authority for the converse proposition, contended for by the collector, that the United States, in holding a claim against a partner as an individual, may assert that claim against the partnership assets ahead of the claims of partnership creditors, which is the proposition condemned in U. S. v. Hack, supra.

"I report that the trustee in bankruptcy in this proceeding is entitled to a decree barring the claim of the collector of internal revenue against the partnership assets of Finkelstein Bros. in priority against the claims of the creditors of Finkelstein Bros. Such order should contain a provision expressly reserving the rights of the collector of internal revenue against the individual estate of Abraham Finkelstein until it is made to appear that such an estate exists in the hands of the trustee in bankruptcy."

William Hayward, U. S. Atty., of New York City, Nelson T. Hartson, Solicitor of Internal Revenue, and Russell N. Shaw, Special Atty., Bureau of Internal Revenue, both of Washington, D. C., and Victor House, Sp. Asst. U. S. Atty., of New York City, for appellants.

Robert P. Levis, of New York City (Max E. Sanders, of New York City, of counsel), for appellee Kaufman.

White & Case, of New York City (Lyle T. Alverson, Afred C. Coxe, J. M. Hartfield, Henry H. Kaufman, Wm. St. John Tozer, and Ralph Wolf, all of New York City, of counsel), for receiver.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] The fundamental fallacy of the contention on behalf of the government is that it confuses priority with the existence of a fund out of which taxes are payable or collectable. The authority to tax must be found somewhere. The Revenue Act of 1918, in section 1400 thereof (Comp. St. Ann. Supp. 1919, § 6371¾a), specifically repealed, inter alia, title 1, including section 8 (e) of the Revenue Act of 1916 (Comp. St. § 6336h), and title 2, including section 201 of the Revenue Act of 1917.

The provisions of the tax statute here concerned are thus section 218 (a) and section 224 of title 2 of the Revenue Act of 1918. As pointed out in the opinion of the referee, supra, there is not the slightest warrant for concluding that the tax was against partnerships, and not solely against the "individuals carrying on business in partnerships." The language of section 218 (a) is too plain for extended discussion, and its meaning could be fortified, if necessary, by the contrast between the Revenue Act of 1917 and the Revenue Act of 1918 in this regard.

As, therefore, there was no income tax against the partnership in either of the cases at bar, we must look to the bankruptcy statute to

ascertain whether it affirmatively provided that the tax assessed against the individuals could be proved against the partnership estate. We need not pause to consider what distinction, if any, there is between "debts" and "taxes" in various parts of the Bankruptcy Act. We may also assume for the purpose of the argument that, if the Revenue Act of 1918 authorized assessment of the tax against the partnership instead of against the individuals, it might not have been necessary to name the United States in any provision as to marshaling.

The point, however, is that, as there is no tax against the partnership, the only remaining theory upon which the tax against the individuals can be proved against and recovered out of the partnership estate is that the Bankruptcy Act of 1898 so provided. Section 5, subd. "f," of that act, did not so provide. This provision reads:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

There can be no longer any doubt that the distinction between individual and firm debts is a matter of substance, which cannot be disregarded. In re Wilcox (D. C.) 94 Fed. 84; In re Janes, 133 Fed. 912, 67 C. C. A. 216; In re Schall v. Camors, 251 U. S. 239, 40 Sup. Ct. 135, 64 L. Ed. 247; In re Jarmulowski (C. C. A.) 287 Fed. 703.

[2] There is, of course, no doubt that the right of priority of the United States in the collection of taxes is an attribute of sovereignty. Marshall v. New York, 254 U. S. 380, 41 Sup. Ct. 143, 65 L. Ed. 315. Under section 64a of the Bankruptcy Act of 1898 (Comp. St. § 9648), it is the duty of the court to order the trustee to pay all taxes, legally due and owing by the bankrupt to the United States, in advance of the payment of dividends to creditors; but, of course, the tax must be "legally due and owing by the bankrupt to the United States."

R. S. U. S. §§ 3186, 3466, and 3467, deal with tax priority, but there is nothing in the provisions of these sections which changes the tax against an individual into a tax against the partnership. Numerous instances will be found in the case of In re Wilson (D. C.) 252 Fed. 631, which illustrate the difference between the identity of the fund or person against whom a claim can be made and respective priorities once the fund or person is found or determined. If, therefore, the Congress had intended that the tax against the individuals should be paid out of the partnership estate prior to the payment of the partnership debts it would have so declared by some affirmative language to that effect, either in section 5 (f) of the statute or in some other provision.

It must be remembered that the Bankruptcy Act of 1898 has now been in operation for a little over a quarter of a century, and that business has been done on the faith and basis of the statute. It can readily be seen that a partnership might not be able to obtain the same amount of credit from banks and other lending sources if, in marshaling the

assets of a partnership, such assets become a fund out of which the debts or taxes due and owing from the individual members are payable prior to or pari passu with the partnership debts.

As pointed out by Judge Rogers in United States v. Wood, 290 Fed. 109, there is a marked difference between the act of 1898 and previous acts in respect of the relation of the United States to the present Bankruptcy Act. In the case just cited, there is a review of many cases illustrative of this proposition. It is hard to believe, in view of the definite language of section 5 (f), that the Legislature intended to create a situation where the debts or taxes due from the individuals might either wipe out or share with the debts due from the partnership, for any such provision might well have been most detrimental to business and commerce. Of course, it is always within the power of the Congress to tax the partnership as distinguished from the individuals; but where, as here, no such tax exists, we confess that we are unable to find anywhere in the Bankruptcy Act of 1898 any provision which authorizes the collection of the tax from property whch was never taxed. United States v. Hack, 8 Pet. 271, 8 L. Ed. 941; United States v. Evans, 25 Fed. Cas. 1033, No. 15,062. The cases of Lewis v. United States, 92 U. S. 618, 23 L. Ed. 513, and In re Strassburger, 23 Fed. Cas. 224, have been analyzed in the opinion of the referee, and the Lewis Case has been further commented upon in the Wood Case, supra, at page 111 et seq.

Our attention has been called to a decision of the District Court of New Jersey in the Matter of Brezin & Schaefer, 297 Fed. 300. We are unable to agree with this decision.[1] There is nothing in the record of either of the cases at bar upon which an equitable lien against the partnership assets may be asserted in favor of the United States. "Equitable lien" is often used synonymously with "equitable assignment" and "impressing a trust." An excellent definition is found in Lighthouse v. Third National Bank, 162 N. Y. at page 344, 56 N. E. 741:

"One of the first essentials to the creation of an equitable lien is the specific thing or property to which it is to attach. Though possession is not necessary to the existence of an equitable lien, it is necessary that the property or funds upon which the lien is claimed should be distinctly traced, so that the very thing which is subject to the special charge may be proceeded against in an equitable action and sold under decree to satisfy the charge.'"

See, also, 3 Pomeroy on Equity (4th Ed.) § 1233; Bispham on Equity (4th Ed.) § 351; Ketchum v St. Louis, 101 U. S. 306, 25 L. Ed. 999; Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865; National City Bank v. Hotchkiss, 231 U. S. 50, 57, 34 Sup. Ct. 20, 58 L. Ed. 115; In re National Cash Register Co., 174 Fed. 579, 98 C. C. A. 425; In re See, 209 Fed. 172, 126 C. C. A. 120.

Every element of an equitable lien is absent in each of the cases here under consideration.

[1] See interesting article in Columbia Law Review, April, 1924, entitled "The Priority of the United States in the Payment of Its Claims against a Bankrupt," by Ralph F. Colin, at pages 360, 371, and 372.

[3] Finally, there is no merit in the suggestion that the marshaling provisions are not applicable in the Jones & Baker case, because there the composition in that case was had before adjudication. The composition was only with the partnership creditors, and there was no composition with the creditors of the individual partners. This was warranted by section 12 of the Bankruptcy Act, as amended June 25, 1910 (Comp. St. § 9596). In re Breitbart (D. C) 291 Fed. 693.

A composition, whether before or after adjudication, so far as affects the questions here presented, stands in the same position as a liquidation through a trusteeship in bankruptcy. See opinion of Referee Remington, Matter of Simon Fox, 6 Am. Bankr. Rep. 525, 530. It is plain that under the Bankruptcy Act it is intended that its administrative sections shall apply, whichever method of administration may be chosen.

We think it unnecessary to comment in detail upon many cases cited in the briefs. It is sufficient to observe that three cases upon which some emphasis is laid by appellant—i. e., Matter of Menist (C. C. A.) 294 Fed. 532, U. S. v. McHatton et al. (D. C.) 266 Fed. 602, and Titus v. Maxwell (C. C. A.) 281 Fed. 433—either are not relevant to the question here under consideration or contain nothing to disturb the conclusion that the decrees below were correct.

Decrees affirmed.