*Decision will be entered under Rule 50.*

EDWARD B. ARCHBALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH A. ARCHBALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EMILY A. GALE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH A. ARCHBALD, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61660, 61661, 61672, 61673, 65062–65064. Promulgated February 28, 1933.

*Joseph H. Morey, Esq., Robert A. Littleton, Esq.,* and *W. W. Spalding, Esq.,* for the petitioners.

*Prew Savoy, Esq.,* for the respondent.

### OPINION.

STERNHAGEN: These petitioners were all members of a partnership, and the controversy is as to the taxable gain to be imputed to each of

them as the result of a sale by the partnership of property contributed by them to the firm's capital at the time it was organized. The facts in detail are set forth in a written stipulation, but it is not necessary either to restate the stipulation or to set forth all the facts in order to indicate clearly the nature of the issue or the basis of the decision.

The Archbald Securities Company was organized as a partnership under New York law on July 20, 1928, to buy, sell and otherwise deal in stocks, bonds and other securities and other property. The organizing partners were Edward B. Archbald, Joseph A. Archbald, and Joseph A. Archbald, Jr. On November 6, 1928, Emily A. Gale (nee Archbald) became a partner. Each of these individuals contributed to the partnership certain securities theretofore owned by him which had been acquired either by purchase or by gift. These contributions ·were entered by the partnership upon its accounts at their fair market value at the time of contribution, and upon this basis the individual partners' proprietary interests were fixed. The market value of the contributed securities was in each instance greater than the cost or other proper basis to the contributor. During 1928 and 1929 the partnership sold some of these securities at prices sometimes in advance of and sometimes equal to their value at the time of contribution, such prices being greater than the cost or other basis to the individual contributing partner.

A concrete instance will be sufficient to exemplify. Edward B. Archbald, in December, 1927, acquired by gift from his father 900 shares of the common stock of Noranda Mines, Ltd., which the father had purchased at a cost of $15.56 per share. This figure, $15.56, was therefore Edward's basis for determining gain or loss, whenever that determination should be made, Revenue Act of 1928, section 113 (a)(2). These 900 shares of Noranda were contributed by Edward to the partnership at the time of its organization, July 20, 1928, and his proprietary or capital account was credited with the market value thereof on that date, which was $50 per share. The other partners, including Emily when she entered, likewise contributed Noranda common shares in divers amounts and were credited with the same market value per share. Eight thousand eight hundred shares were thus contributed by the original three partners in July and 1,200 by Emily in November. In August and October, 1928, the partnership sold 4,000 shares for $224,877.50, a rate of over $56 a share, and in November and December, 1928, after Emily's admission to the firm, 2,200 shares were sold for $136,827, a rate of over $62 a share. The remaining 3,800 shares were sold in 1929 for $240,873.25, a rate of over $63 a share.

The partnership remained in existence without change through 1928 and 1929, and still continues. When dissolution occurs, each

partner will be entitled, by the agreement, to the " return of his contribution," which, by the context, means the value and not the identical property contributed. The accounting period and method apparently used by the partnership and by the individuals were the calendar year and the actual receipts or cash method, and the case is free from any difficulty attributable to disparity in these respects between the practice of the partnership and that of any partner.

The partnership filed its returns for the period July 20, 1928, to December 31, 1928, and for the calendar year 1929, as provided in the Revenue Act of 1928, section 189, and included in its net income as gain the difference between the amount received in the sale of the Noranda shares and their market value when contributed. The net income so computed was shown as distributable among the several partners in accordance with their distributive shares; and this distributive share was in turn included by each partner in the net income shown on his individual return. No more than this was actually distributed by the partnership in respect of such sales.

The Commissioner added to each individual petitioner's income the increment in value of the shares between the time of the petitioner's original purchase (or that of his donor), and the time of contribution to the partnership. This he computed by apportioning the number of shares sold among the partners in the same ratio as their contributions of such shares were to the whole number of such shares contributed, and to such proportionate number of shares applying the aforesaid increment. Thus, since Edward contributed 900 of the first 8,800 shares, to him were assigned 9/88 of the first 4,000 sold, or 409.09086 shares, and to his distributive share of partnership income was added the increment of $34.44 per share ($50 − $15.56) multiplied by 409.09086, or $14,089.09. The Commissioner's determination is mathematically more complicated by reason of the change in ratio resulting from Emily's entrance into the firm on November 6 with an additional contribution and the sale thereafter of 2,200 shares of the 6,000 then owned in November and December, and also by the contribution and sale of shares in other corporations. But such additional facts do not illumine the consideration of the issue.

In the notices of deficiency issued December 28, 1931, to the several petitioners, the determination of deficiency for 1928 was predicated upon the " opinion that the taxable gain to the contributing partner is the difference between cost and value of securities at date turned into and used as a basis for determining profit or loss by the partnership at date of sale by the partnership." After the publication, under date of January 11, 1932, of an opinion by the General Counsel of the Bureau of Internal Revenue, G. C. M. 10092, XI-2-5349, the deficiencies for 1929 were expressly predicated upon that opinion, the conclusion of which is " that the basis of computing gain or loss

upon the sale by a partnership of an asset contributed in kind to the partnership enterprise is cost or other basis to the contributing partner." The petition and answer joined issue on that view, and respondent stands upon G. C. M. 10092 here. By an amendment to the answer, the respondent presents the alternative contention that if the individual partner's basis is not to be used in determining partnership distributable income, then it must be held that the contribution by each partner was in 1928 a taxable realization of income to him of the increment reflected in the then market value; and this view with its undisputed facts, the petitioner traverses.

The Commissioner's argument is largely predicated upon the idea that because a partnership is not separately taxable, its existence must be disregarded entirely in the chain of ownership, so that the sale, although admittedly made by the partnership, imports as the basis for measuring the gain or loss the cost to the contributing partner. We find nothing to support that idea. The taxing acts have, since the adoption of the Sixteenth Amendment, recognized the existence of partnerships, expressly providing, however, except in the Revenue Act of 1917, that partnership income should be taxed distributively to the individual partners. *W. J. Burns*, 12 B. T. A. 1209, 1222; T. D. 1957, March 12, 1914, 16 T. D. 37. The profits tax of 1917 was imposed directly upon the partnership. The duty of withholding has since 1913 been imposed as well upon copartnerships as upon others. The income of partnerships has been required to be computed *quoad* the partnership before ascertaining the taxable distributive shares, and this partnership income is so far distinct from that of the individual partners that it takes its own fiscal year whenever that year is different from that of the partner, L. O. 816, 1 C. B. (1919) 168; L. O. 972, 2 C. B. (1920) 163; and this, even when it results in a different credit for an individual in partnership from that of an individual sole proprietor. *Shearer* v. *Burnet*, 285 U. S. 228; *Charles Colip*, 5 B. T. A. 123. The fact that the tax imposed upon corporations and associations carried an express exception—" not including partnerships "—implies a recognition of the unity of a partnership; and the exclusion is only applicable to " ordinary partnerships," *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110.

If the law of New York were controlling, it could not be said that the partnership has no separate standing, for by her own decisions applying her own statute, the uniform partnership act, ownership by the partnership is not identical with ownership by the partners. *Costello* v. *Costello*, 209 N. Y. 252; 103 N. E. 148. Cf. *Harris* v. *Commissioner*, 39 Fed. (2d) 546; and see *Sam H. Harris*, 11 B. T. A.

871, 874. The very income which is by the Federal Government taxed to the individual members, irrespective of actual distribution, is, before partnership distribution, withheld from their individual creditors in bankruptcy except as reflected in their general interests in the partnership, *United States* v. *Kaufman*, 267 U. S. 408; *In re Finkelstein*, 298 Fed. 11; and for such individual tax the United States has no priority of claim against the bankrupt partnership. Upon the death of an individual partner, none of its assets are specifically his, irrespective of his specific contributions.

It is clear, therefore, that a doctrinaire assertion that a partnership is not an entity affords no key to the determination. Congress has not taxed partnerships directly; but, apart from that, there is no reason to think that their existence was ignored or that for other purposes under the statute their legal character was not to be fully accepted. *W. J. Burns*, 12 B. T. A. 1209; *Henry W. Healy*, 18 B. T. A. 27, 32. Whatever particular paradox this may seem to promote, it is not to be resolved by dogmatically treating the method of tax as if it were an obliteration of partnerships. If the necessary adjustment is difficult, it is perhaps no more so than many other problems of partnership law. Under the 1918 Act, personal service corporations were not taxed directly, the tax being imposed upon the shareholders as if they were partners; yet it has never been suggested that their legal existence was to be ignored. *Robert Van Iderstine, Trustee*, 24 B. T. A. 291.

Considered thus realistically, without being overwhelmed by concepts, the issue is not foreclosed by the language found in some earlier opinions. *United States* v. *Coulby*, 251 Fed. 982, often quoted, is clearly confined to the taxing of partnership income, and is no authority for saying that generally partnerships were ignored. The Circuit Court of Appeals, in affirming the judgment, 258 Fed. 27, removed all doubt when it said, "However, the statement made in the opinion that a partnership has no legal existence, aside from the members who compose it, is too broad, as, for instance, in view of the Bankruptcy Act, yet as applied to the particular portion of the statute and the question in hand it is correct." The essence of the decision is that the dividend credit for normal tax was contemplated by the statute to be coincident with the tax, and not to lapse because the partnership was not directly taxed.

Since, then, a partnership is treated sometimes as an entity and sometimes not, its nontaxation carries no implication of the measure of its income or that of the individual partners. It is clear from section 183 of the 1928 Act and all its predecessors that partnership income was fully recognized as a unit figure, and that

its computation proceeded from the same bases as if it were that of an individual. The basis of the partnership's gain is the capital investment or cost of the partnership, as it would be of an individual.

But the Commissioner would now tax the individual partners not alone upon their distributive shares of partnership income so computed, but upon a further computation either of their partnership shares or of their other income. Although the partner may have no more than his distributive share of partnership income, and the capital of the partnership may be preserved, he is nevertheless to be taxed as if the increment of the item sold above its original cost to him were realized by him. Being contrary to fact and contrary to his legal rights as a partner, it should be supported by more than ingenious construction of the alleged statutory purpose. Language quite clear either in terms or implication should be found to demonstrate such a legislative purpose; and more especially since in the twenty years of income taxation this purpose has never heretofore been suggested. But no such language appears. It is only by applying to the statute an elusive analysis, complex in its assumptions, that the alleged purpose is educed. Such a construction should be rejected unless it is impelled by necessity either to avoid clear error or important administrative difficulty. There is no showing of either; but, on the contrary, the new construction involves new difficulties in its application. If the partnership gain or loss is to be measured on the basis of the contributing partner's cost, the partnership accounts must for tax purposes alone carry data and computations wholly exotic as regards the partnership affairs. Variances would either be carried on or would require unforeseen adjustments not alone between tax data and business data, but also otherwise. In respect of such capital contributions as we have here, consisting of stock in trade, a harmonious system of inventory must be devised, cf. *Charles A. Ferguson*, 14 B. T. A. 820, while if the contribution be of capital assets such as buildings or plant, depreciation and obsolescence would present problems. Interminable conflict and difficulty might ensue in respect of the relative rights of the several partners in such property accounts, cf. *Henry Wilson*, 16 B. T. A. 1280.

Within the Commissioner's contention is the idea that the sale of the item of property by the partnership is the first realization of the earlier increment and hence the tax should be imposed at this point lest it escape entirely. The reasoning is similar to that which caused Congress to enact the so-called donor-donee provision in respect of gifts, i. e., that the gain upon the sale of property acquired by gift

should be based upon the cost to the donor, *Taft* v. *Bowers*, 278 U. S. 470. Here, however, Congress has omitted to prescribe a similar rule, and neither the Commissioner nor this Board should do so under the guise of statutory construction, even if it could be assumed that the system were thereby improved.

There is also no justification under the statute or in reason for adding to the individual's other income something beyond his distributive share of partnership income as a separate realization by him through the sale by the partnership of the increment arising prior to his contribution. Clearly at the time of the partnership's sale, he realizes nothing directly and at the end of the year he has only his distributive share of partnership income. See *W. C. Langley & Co.*, 2 B. T. A. 199. His capital contribution to the full extent of its value at the time of contribution is still his stake in the business. He realizes no part of it until there is a distribution of partnership capital. When such distribution takes place either by partial liquidation or with dissolution, he measures his gain or loss upon the cost or March 1, 1913, value of his property contribution. *Nigel Leslie Campbell*, 1 B. T. A. 441. This has been the view which has been consistently adopted and administered. *Zolton* v. *Morvay*, 19 B. T. A. 928; I. T. 2010, III–1 C. B. (1924) 46; S. M. 3748, IV–2 C. B. (1925) 17. Under it, the taxable increment is taxed when it comes to the individual. *Henry Wilson*, 16 B. T. A. 1280. The suggestion that the increment may go untaxed in the event the partner dies before such realization, is not sufficient to deflect the rule, for to a similar extent the death of an individual owner likewise defeats a tax upon increment which has not theretofore been realized. There has been no inclination thus far to enact either an obituary toll by treating death as a realization of income or to impose a preventive substitute.

The Commissioner's alternative claim, now for the first time presented, is that, if the partnership is so far an entity as to be a barrier to the use of the individual contributor's earlier cost basis, then the contribution by the individual to the partnership must be what he calls a " closed transaction," being an exchange of the corporate shares for an interest in the partnership which reflects the contribution value of the corporate shares; and that such " closed transaction " involves a realization to the individual of the gain. In this proceeding, it happens that the individual's contribution to the partnership was made in 1928, which was the year in which the partnership sold the property contributed, and thus the alternative issue is made available in a single proceeding. We are of opinion, however, that there is no serious dilemma, as the respondent suggests.

Since a partnership stands ambiguously before the law in other fields, it is not disturbing that it should be found so under the income tax statute. So it has been for many years, S. O. 42, 3 C. B. (1920) 61, without the suggestion heretofore of difficulty to either the Bureau or the taxpayers. The logical conflict seems thus far to have had no untoward result, and no reason is shown why the "page of history" should now be torn out. *New York Trust Co.* v. *Eisner*, 256 U. S. 345. However the proposition might have been treated at the threshold of income taxation in 1913, a change now in the long established practice should be prompted by important practical considerations and not merely by a desire for logical harmony.

But if we felt entirely at liberty to consider the contention apart from its history, we would find it unconvincing. That the contribution of individual property to a newly organized partnership operates to shift its title from the individual and to change the nature of his interest is clear. Cf. *Pharos-Reporter Publishing Co.*, 1 B. T. A. 879. But it does not follow that such change is itself the realization of gain or loss. Cf. L. O. 816, 1 C. B. (1919) 168. On the contrary, the investment is now more fettered than before, as it is bound with others in the joint enterprise. Although a transformation in title has occured, there has been no exchange of property for other and different property, but only a further venturing of the old investment in a new project with the hope of added income in the future. Cf. *Blodgett* v. *Silberman*, 277 U. S. 1, 10. Unlike corporate shares received in exchange for the subscription price in property, the new partnership interest may not be separately disposed of without destroying the partnership. *Harris* v. *Commissioner*, 39 Fed.(2d) 546. To this extent the partnership and the partner are identical, and a corporation and its shareholders are not. And even in respect of the corporation, when shares are not issued for the property contributed, as in the case of a contribution of property by an existing shareholder by way of paid-in surplus, it is not held that the increment reflected in the increased value of the shares is income before it is more definitively realized by sale or liquidation of the shares.

Finding ourselves unconvinced either by G. C. M. 10092 or by the argument here, we hold that the change now being made by the Commissioner in the long established rule is contrary to law, and his determination is therefore reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Love dissents.