**FLANNERY et al. v. UNITED STATES.**
No. 6090.

District Court, D. Maryland.
Dec. 12, 1938.

Caesar Aiello and George E. Elliott, both of Washington, D. C., for plaintiffs.

Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md., James W. Morris, Asst. Atty. Gen., and Thomas G. Carney, John G. Remey, and Andrew D. Sharpe, Sp. Assts. to Atty. Gen., for the United States.

CHESNUT, District Judge.

This is an income tax suit in which the executors of a taxpayer are suing, after proper procedure, to recover an alleged overpayment of income taxes by their decedent for the year 1929 in the amount of $7,730.56 (consisting of $6,923.33 tax and $807 interest) with interest thereon since the dates of payment. As the taxes were paid to a former Collector, not now in office, the suit is against the United States as authorized by 28 U.S.C. § 41(20), 28 U. S.C.A. § 41(20).[1] The case has been tried without a jury. The facts are stipulated but for the purposes of discussion the statement of them may be shortened and simplified.

On March 20, 1929 a partnership (of which the taxpayer was a member) engaged in the banking and stock brokerage business in Washington, D. C., under the name of W. B. Hibbs & Co., sold a one-quarter interest in a seat on the New York Stock Exchange, which was a partnership asset, for $109,500. The question in the case is what taxable income resulted therefrom to the taxpayer. The acquisition of this fractional interest in the seat came about in the following way. On and before March 1, 1913, W. B. Hibbs, the taxpayer, and one W. W. Spaid composed a partnership in the same business, and held as an asset thereof a whole seat on the New York Stock Exchange, the cost basis of which to the firm as of March 1, 1913 was $48,000. This latter firm continued in business until September 30, 1928, although from time to time after March 1, 1913 there were changes in the respective proportionate interests of Hibbs and Spaid in the partnership. On September 30, 1928, Hibbs had a two-thirds and Spaid a one-

---

[1] The tax for 1929 was paid in part by a credit for overpayment for 1928; but the case seems distinguishable from Lowe Bros. Co. v. United States, 304 U.S. 302, 58 S.Ct. 896, 82 L.Ed. 1362. The jurisdiction of this court has not been challenged by the defendant, although the sum sought to be recovered, including interest, may exceed $10,000. Taxes for both years were paid to the same Collector, not now in office.

third interest in the firm. Its capital was then $1,333,000. On October 1, 1928 the firm was reorganized to continue the same business under the same name, in accordance with new articles of partnership. Two new partners were admitted who contributed $750,000 of new capital, and Hibbs withdrew $388,666, reducing his capital interest to $500,000 and his proportionate interest in profits being reduced to two-sevenths. The Stock Exchange seat then held by the old firm was contributed to the new firm at its then market value of $415,-000. On January 24, 1929 the New York Stock Exchange increased the authorized seats upon the Exchange by one-fourth, thus giving the new firm without added cost, a one-fourth interest in an additional seat.

The Commissioner determined that the value to the firm of one-fourth seat interest, based on the market value of the whole seat as of October 1, 1928, at $415,000 (plus subsequent capitalized dues of $400) was $83,080, which, deducted from the sale price of $109,500, resulted in a net profit to the *firm* of $26,420 realized from the sale. The taxpayer's portion of this profit (two-sevenths) was $7,548.57. There is no dispute between the parties as to this amount; but the Commissioner determined a much larger amount of profit to the taxpayer by computing his *individual* profit, in addition to his interest in the *partnership* profit, on the excess of his interest in the seat when contributed to the new firm in 1928 at $415,000, over the cost basis to him of his interest therein as of March 1, 1913. It is not necessary here to state the whole computation in detail, but sufficient to note that the Commissioner allocated to the taxpayer as *additional* individual income for the year 1929 (over and above his proportionate interest in the partnership income) attributable to the sale the sum of $55,386.-67 as profit for the period *March 1, 1913*

*to September 30, 1928*. The result of this addition to income was to increase the tax by $6,923.33, which is the principal of the sum sought to be recovered in this suit. The precise question that we have to deal with is whether the Commissioner was justified in increasing the taxpayer's income for the year in the amount of $55,-386.67. Stated abstractly the question is this—when a partnership sells an asset at a profit over and above the *cost basis to it*, which asset has been contributed to the partnership by one of the partners at a valuation greater than the *cost to the partner*, is the partner's individual income to be computed by *adding* to (1) his proportionate share of the *partnership* profits (2) his individual profit based on the excess of the amount at which he contributed the asset to the partnership over *his* cost basis for the asset.

There was no specific statutory rule upon the subject until Congress answered the question in a somewhat different way by section 113(a) (13) of the Revenue Act of 1934, 26 U.S.C.A. § 113(a) (13),[2] which provided that the basis (to the partnership) for the determination of profit on the sale of a partnership asset should be that of the transferor of the asset to the partnership. This amendment of the law was not made retroactive, although the House and Senate Committee Reports on the Bill[3] contained statements to the effect that "the Committee believes that this provision simply makes specific the correct interpretation of the general provisions of the present law". Whether this view is correct depends upon the proper construction of the applicable provisions of the Revenue Act of 1928. The controlling provisions are section 111(a) and (c)[4] reading:

"*Sec. 111. Determination of amount of gain or loss.*

---

2 "§ 113. *Adjusted basis for determining gain or loss.*

"(a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that * * *

"(13) *Partnerships.* If the property was acquired, after February 28, 1913, by a partnership and the basis is not otherwise determined under any of the paragraphs (1) to (12), inclusive, of this subsection, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss rec-

ognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. If the property was distributed in kind by a partnership to any partner, the basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property."

3 Report No. 704, Report 558, 73d Congress, 72d Session.

4 45 Stat. pp. 815, 816, 26 U.S.C.A. § 111(a, b).

"(a) *Computation of gain or loss.*—Except as hereinafter provided in this section, the gain from the sale or other disposition of property, shall be the excess of the *amount realized therefrom* over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized. * * *

"(c) *Amount realized.*—The *amount realized* from the sale or other disposition of property shall be the sum of any money received plus the *fair market value* of the property (other than money) received." (Italics supplied.)

In considering the application of this section to the sale of a partnership asset it should steadily be kept in mind that the profit is not taxable unless the taxpayer receives from the sale, in cash "plus the fair market value of the property (other than money) received", an excess over cost basis. Thus where the consideration received for the article sold is not represented by money only (and the money does not exceed the cost basis), it is necessary that the consideration other than money must have a determinable "fair market value", in order to "realize" the profit, and make it taxable as income. We must also keep in mind the provisions of the income tax laws affecting partnerships. They are not directly taxed but the *distributive* shares of the partners, whether distributed or not, in the *net income of the partnership* for the taxable year, are taxed; and for the purpose of determining such distributive shares the partnership is required to make a return of *partnership income* for the year.[5]

The legal history of the controlling sections of the Revenue Act of 1928, and of similar provisions in prior Revenue Acts, furnishes no support to the Government's contention. This history, from 1918 to May 14, 1934, was reviewed by Circuit Judge Learned Hand in Helvering, Commissioner, v. Walbridge, 2 Cir., 70 F.2d 683, 684, as follows:

"Ever since the Act of 1918 the Regulations had provided that only upon dissolution of the firm did the partner individually 'realize' any gain or loss on firm transactions, and at that time his gain was the difference between his liquidating dividend and the original cost to him of his contribu-

tion. Article 1570, Regulations 45, Act of 1918; article 1570, Regulations 62, Act of 1921; article 1603, Regulations 65, Act of 1924; article 1603, Regulations 69, Act of 1926; article 604, Regulations 74, Act of 1928. Indeed if the liquidating dividend was in kind, no gain was 'realized' until the property distributed was sold, a provision of doubtful validity except perhaps in cases where the dividend did not itself have any 'fair market value.' In the face of such long continued departmental interpretation we should be slow to construe the statute otherwise; indeed we would not do so at all unless the statute flatly required it. It does not."

The contrary view now contended for by the Government was first advanced by the Commissioner in 1932 on the basis of a ruling designated as General Counsel Memorandum 10092.[6] The Commissioner applied this contrary view in the determination of the taxpayer's income for 1929. This ruling was first legally tested in the case of Archbald v. Com'r, 27 B.T.A. 837, and there rejected by the Board of Tax Appeals, whose decision was affirmed by the Second Circuit, Helvering v. Archbald, 70 F.2d 720, and likewise in Helvering v. Walbridge, 2 Cir., 70 F.2d 683. See, also, Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200. Certiorari was denied in all three cases. 293 U.S. 594, 55 S.Ct. 109, 79 L.Ed. 688; Helvering v. Chisholm, 296 U.S. 641, 56 S.Ct. 174, 80 L.Ed. 456. And this principle has been consistently adhered to in subsequent decisions of the Board. Planters Gin Co. v. Commissioner, 28 B.T.A. 22; Donner v. Commissioner, 32 B.T.A. 364; Eaton v. Commissioner, 37 B.T.A. 715. There are no decisions to the contrary. In connection with the expression in the House and Senate Reports on the Revenue Act of 1934, above referred to, it may be noted that these Reports were made prior to May 10, 1934, while the decisions in the Walbridge and Archbald Cases in the Second Circuit were made on May 14, 1934, and therefore the Congressional Committees did not have these decisions before them in formulating their reports.

The facts in the Walbridge and Archbald Cases are almost parallel to the instant case. In them the partnership was

---

[5] See sections 181, 182, 183, 189 of the Revenue Act of 1928, 45 Stat. 840, 841, 842, 26 U.S.C.A. §§ 181, 182, 183, 187, 188 note.

[6] Cumulative Bulletin, 1932, Vol. 11, No. 1, p. 114.

formed to trade in financial securities and in 1928 and 1929, sold securities which had been contributed by an individual partner at a price higher than that at which he had acquired them and higher than their value when he contributed them to the partnership. The firm in due course reported *its* profit on the transaction, and the individual distributive shares of the partners therein; but the Commissioner added to the individual partner's income the price at which the shares had been taken by the firm over their cost to *him*; and it was the tax on this latter alleged gain which was there in issue. The taxpayer successfully contended that this disputed item of income was not taxable to him unless and until actually *realized* upon a dissolution of the firm and consequent *distribution* to him. In upholding the taxpayer's contention it was said in the opinion:

"The relevant section is section 111(c) of 1928, 26 U.S.C.A. § 2111(c) [26 U.S. C.A. § 111(b)], which provides that 'the amount realized * * * shall be the sum of any money received plus the fair market value of the property * * * received'; the critical words are 'fair market value.' * * * In the case at bar Walbridge's share in this firm, engaged in marketing securities, was not 'marketable'; the assumption is wholly unfounded that it was worth the value of his contribution. * * * So far therefore as the Commissioner proceeded on the theory that the value of Walbridge's share in the firm could be made the minuend in an equation determining a 'recognizable gain,' he was wrong."

After pointing out the nature of a partnership, and its legal treatment at law and in equity, and the relation of the individual partners thereto, and the nature of the interest and rights of the individual partner in any particular partnership asset, the opinion continued:

"But in neither case could that gain be assessed against the partner who contributed the property, for he had no interest whatever in this part of the profit. He had altogether parted with the property except that proportion which he retained as partner; he had got for it his interest in the contribution of the other partners, and any gain to him must be measured in terms of

that exchange. Moreover, he may not be taxed even upon the profit realized on that proportion of the property of which at common-law he remained owner. It was firm assets, he could not withdraw it; he had no effective power over it, and therefore no interest in it, save as it might figure in 'his share of the profits and surplus.' * * * Thus it appears to us that the regulation provided the proper way to deal with a partner's rights, and that a necessary corollary from it is that no gain is 'realized' by a separate partner when the firm sells partnership property."

And in the Archbald Case, decided the same day, it was held that the intervention of a new partner between the date of the formation of the original firm and the sale of the partnership asset did not change the ruling; and that, even if the view, should be taken that the partnership was dissolved on the admission of the new partner, nevertheless "in such a setting, obviously the dissolution of the firm resulted in the receipt by the partners individually of nothing having a 'fair market value.'" See, also, Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 75 L.Ed. 1143; Helvering v. Tex-Penn Co., 300 U.S. 481, 499, 57 S.Ct. 569, 81 L.Ed. 755.[7]

Counsel for the Government challenges the correctness of these consistent adjudications, although admitting there is no contrary authority anywhere. In the Eaton Case, decided by the Board April 15, 1938, the Commissioner's position is stated as follows:

"Upon brief respondent states that he is cognizant of the above decisions and of the fact that they are contrary to his present contention. He, though citing no authorities in support of his view, states simply that he does not agree with the decisions and, as stated by him in XIV-I C.B. 208, he declines to follow them 'pending the outcome of further litigation of the question involved.' The Board is of the opinion however, that the above decisions are correct and should be followed.

"It is unnecessary to discuss this question at length or to repeat what was said in the above cases. An amendment was made to the revenue act in 1934 under which, in effect, the rule contended for by

---

[7] Further discussion of the subject matter may be found in 34 Columbia Law Review, 1562; 8 National Income Tax Magazine 401; Montgomery Income Tax Handbook, 1936, 7, p. 156; Paul & Mertens Law of Fed. Inc. Tax, 1937 Supp. § 33.23, notes.

the respondent in the instant proceeding is applicable to later years. Section 113(a) (13) of the Revenue Act of 1934 [26 U.S. C.A. § 113(a) (13)], provides that if property is acquired by a partnership, its basis shall be the same as it would be in the hands of the transferor. If, therefore, the present controversy were under the Revenue Act of 1934 or a later year, the cost or other basis to the partnership would be the same as the cost or basis in the hands of the contributing partner. But Congress did not attempt to make the above legislation retroactive. On the contrary, it stated (sec. 1, Revenue Act of 1934 [26 U. S.C.A. § 1]) that the provisions of the title, which included section 113(a) (13), supra, should 'apply only to taxable years beginning after December 31, 1933.' A law will not be given retroactive effect unless the intention that such effect should be given is made clear by the act itself. Cf. Brewster v. Gage, 280 U.S. 327 [50 S.Ct. 115, 74 L.Ed. 457]; United States v. Magnolia Petroleum Co., 276 U.S. 160 [48 S.Ct. 236, 72 L.Ed. 509]; Shwab v. Doyle, 258 U.S. 529 [42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454]."

It has been customary in this district to follow decisions of a Circuit Court of Appeals of another Circuit where there is no contrary ruling on the question of equal or greater judicial authority. And I find no sufficient reason for departing from that rule in this case, especially as an independent examination of the point involved satisfies me that the decisions are consistent with the Regulations of the Treasury Department prior to 1932,[8] and also consistent with the long continued practice and general understanding of the income tax laws affecting partnerships. The Government's contention would seem to involve the necessity for partnership accounting with respect to matters not directly involved in the partnership affairs; and therefore to require data to be furnished by the partnership which might not be available to it. This thought was well expressed by the Board in the Archbald Case, 27 B.T.A. 837, 842—

"If the partnership gain or loss is to be measured on the basis of the contributing partner's cost, the partnership accounts must for tax purposes alone carry data and computations wholly exotic as regarding partnership affairs. Variances would either be carried on or would require unforeseen adjustments not alone between tax data and business data, but also otherwise. In respect of such capital contributions as we have here, consisting of stock in trade, a harmonious system of inventory must be devised, cf. Charles A. Ferguson [v. Com'r], 14 B.T.A. 820, while if the contribution be of capital assets such as buildings or plant, depreciation and obsolescence would present problems. Interminable conflict and difficulty might ensue in respect of the relative rights of the several partners in such property accounts, cf. Henry Wilson [v. Com'r], 16 B.T.A. 1280."

The pertinency of this comment, at least prior to the Revenue Act of 1934, is illustrated by the complicated computation required to be made in this case by the Commissioner to ascertain the taxable income of Hibbs, over and above that of his distributive share of the partnership profit, the details of which can be found in the stipulation but have been omitted in this opinion for brevity.

Counsel for the Government in this case advance an alternative contention. It is this. If Hibbs, the taxpayer, did not "realize" the additional profit on the sale in 1929, then it should be held that he realized a larger profit on the formation of the new partnership in 1928; and therefore there should be no recovery of the

---

[8] A close reading of G. C. M. 10092 (supra) indicates that the ruling there made, on which the Commissioner acted in this case, is really based on a seeming confusion between distributive shares of partnership *income*, and distributive shares of *capital* upon liquidation. See p. 116 of Cum. Bul. Vol. 11, No. 1. It is argued that on sale of an asset by the partnership not only does the firm make a profit but the share of a partner who has contributed the asset sold at a sum greater than his cost, thereby realizes a proportionate greater profit than the other partners, by reason of his interest in the partnership *capital*; but this reasoning ignores the fact that by the income tax statutes it is only the distributive shares of the partners in the *partnership net income* that is taxable.

The courts are reluctant to apply tax laws contrary to long current administrative regulations and practice, and where the applicable statutes have in the meantime been re-enacted by Congress. Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; Hartley v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399.

overpayment for 1929 because there was an underpayment for 1928 in a greater amount than the recovery now sued for by the plaintiff. This alternative defense is set up in this case by a plea which alleges:

"And for a further and additional plea on equitable grounds says that in any event the plaintiff ought not in equity and good conscience recover in this suit because $18,-766.94 of the additional income tax assessment against William B. Hibbs, deceased, for 1929 was discharged by the Commissioner erroneously crediting such amount thereagainst, that is to say, the Commissioner, through error and mistake, issued a certificate of overassessment for 1928 of $19,978.43 and refunded part of said amount and credited the balance of $18,-766.94 thereof on or about June 2, 1932, against the aforesaid 1929 assessment; that in truth and in fact there existed no overassessment for 1928 but a deficiency tax of $28,604.60 which could at such time have been lawfully and timely assessed but which was barred from assessment and collection when the 1929 claim for refund was filed on July 17, 1933; therefore, such erroneous credit should be offset against the amount involved in this suit to the extent necessary to defeat any recovery herein."

The equitable plea in this case is based on the theory of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, where an erroneous assessment against trustees, paid by them, which should have been made for the same year against the beneficiary of the trust, was not recoverable by the trustees who had paid it before the expiration of the period of limitation. But the present case is rather ruled by McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, where it was held that the Commissioner could not credit, and retain, an overpayment for a later year against a deficiency for a prior year then barred by limitations. Furthermore there is no outstanding deficiency assessment against the taxpayer for 1928, as the Commissioner gave a certificate of overassessment for that year and credited the overpayment on the deficiency assessment for 1929. It is now contended that he can again reverse his action, and credit the overpayment for 1929 against the alleged still unassessed deficiency for 1928,

now barred by limitations. This seems to be not permissible.

Apart from the serious doubt as to the validity of the equitable defense set up in this case from the standpoint of procedure, it seems clear that there was as a matter of substantive right no error in the Commissioner's action as to the taxes for 1928. The reasoning in the Walbridge and Archbald Cases seems conclusive on this point. And this alternative position is itself inconsistent with the theory and practice in the Treasury Department long prevailing before G.C.M. 10092 in 1932, and on this point reaffirmed therein;[9] and again by the Commissioner in this very case.

It is now argued that, under the District of Columbia law of partnership, there was in legal effect a dissolution of the old firm in 1928, and constructively a liquidation of its assets in kind at the enhanced value of the seat. Actually this did not occur, but assuming that was its legal effect, the profit would not have been realized until the seat was sold for cash or other property having a market value, by the old partners. What was received by them was an interest in the new firm, which did not have a fair market value, as was specifically held in the Archbald Case.

Counsel for the Government urges that the tax must be due either for 1928 or 1929, otherwise the tax on the profit from the sale of the asset will be lost to the Government. This assumes that such a profit was necessarily "realized" by the taxpayer in one or the other year; but in fact it was not realized by him in 1928 because what he then received, other than cash, had no "fair market value"; and not in 1929 because what was then realized was not his but the partnership's profit, and he has paid his tax on the profit as a partner. Nor does it follow in such a situation that the Government necessarily loses a tax really then due. The income tax law does not tax profits from sales until realized by the taxpayer in cash or property having a fair market value. When a partnership sells an asset the individual partner realizes no profit beyond the partnership profit; and this is true whether the asset has been contributed by him or acquired from

[9] See Solicitor's Opinion 42; Cum. Bul. Dec. 1920, pp. 60–63; Office Decision 816, Cum. Bul. Dec. 1919, p. 168; Tax Board Ruling, 34, Cum. Bul. Dec. 1919, p. 46; Income Tax Ruling, 2010, Cum. Bul. 1924, p. 46; Sol. Memo. Cum. Bul. 1925, p. 17; G.C.M. 10092, 11-1-C.B. 114.

another. The proceeds of the sale take the place of the asset sold and abide the fortunes of the partnership, until its dissolution and liquidation; and not until then is there an actual realization of the ultimate profit, if any, by the individual partner. It is seen that what we are here dealing with is tax postponement, rather than tax avoidance. It is true that in the instant case the partnership was not dissolved until the death of the taxpayer in 1937, and therefore his ultimate profit, if any, was not taxable as income, but as estate. But this accidental feature of the case cannot properly affect the applicable principle. See Hartley v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399. It may be suggested that successive partnerships could be used to indefinitely postpone the maturity of the tax on the enhancement in value of capital assets. Such a view was considered in Chisholm v. Commissioner, supra, where it was held that the test was whether the partnership was bona fide or merely a collusive sham. See, also, Gregory v. Helvering, 293 U.S. 465, 467, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. There is here no suggestion as to the lack of genuineness of the partnership of 1928. There was a substantial reorganization of the firm. Two new partners were admitted who contributed $750,000 additional capital; the taxpayer, Hibbs, withdrew $388,666 of his capital reducing his capital interest to $500,000 and also reducing his percentage interest in the profits from two-thirds to two-sevenths. Spaid, the other partner in the old firm, also then contributed additional capital. It was a substantial reorganization of the old firm.

Possibly it might also be suggested, although it has not been by counsel in this case, that the cost basis to the 1928 partnership should be the same as that of the first partnership in 1913. And this is indeed just what is provided in the 1934 Revenue Act, supra. But that is not what is contended for by the Government in this case. Under the 1934 Act the profit on the sale of a partnership asset is computed to the *partnership selling it* on the basis of cost to the former owner (transferor) who contributed it to the partnership, irrespective of the valuation placed upon it in the formation of the partnership. If applicable to this case it would seem to result that each of the four partners in 1929 would be chargeable with profit in proportion to their respective interests in the profits of the firm. But this would be highly inequitable to the new partners as they actually realized no such profit on any theory.[10] It is obvious that it would have been inequitable to give a retroactive effect to the statute, and Congress did not undertake to do so. Indeed the Government does not contend that this should be done in this case; because it is the contention that not one but two separate computations must be made, first to ascertain the partnership profit and then another computation to determine the additional individual partner's profit. How the matter is handled in practice under the 1934 Act was not developed in this case.[11] And for the years prior to 1934, it may be observed that the cost basis of a partnership asset does not necessarily change merely because a new partner is admitted, and thus a new firm technically formed. Unless there is a new valuation of the asset the old cost basis would continue.

Neither the taxpayer nor the Government has pursued a consistent theory throughout this tax case. In the taxpayer's original return for 1928 he reported his proportion of the profit from the enhanced value of the seat in 1928 over 1913 cost as a sale. The Revenue Agent at first accepted this theory, but proposed to increase the amounts reported. Thereupon on conference some years afterwards, and after the promulgation of G.C.M. 10092, the Commissioner determined that there was no such realized profit for 1928; but then took the position that a profit was realized in 1929 not only by the partnership but by the individual in the additional amount of $55,386.67, and on or about June 2, 1932, issued a certificate of overassessment for 1928 in the amount of $19,978.32,

---

[10] The actual partnership profit realized from the sale in 1929 was only $26,420. Three-sevenths (the aggregate shares of the new partners) of this would be $11,319. On the basis of 1913 cost ($50,435.40, including adjustments) of the whole seat, one-fifth of a seat would have been worth $10,087.08, which, subtracted from $109,500 (the sale price in 1929), would show a partnership profit of $99,412.92, three-sevenths of which would be $42,605.52.

[11] But see Reg. 94,86, Art. 112 (a) under the 1934 and 1936 Acts, from which it is inferable that the partnership articles must be looked to in practice. Paul & Mertens, Law of Fed. Inc. Taxation, 1937 supp. p. 10.

and applied a part of said amount on a deficiency for 1927 and credited the balance, $18,766.94, against the increased 1929 assessment. The Government now contends that this certificate of overassessment for 1928 and resulting credit for 1929 was erroneous; and the credit to the amount necessary should be shifted or transferred to the deficiency thus created in the 1928 tax for which, however, there is no outstanding assessment and against which limitations have now run.

It should also be said that the taxpayer would be accountable for the cash portion of his withdrawal of capital on the formation of the new firm in 1928 if it exceeded the cost of his capital account contributed as of 1913 with proper adjustment; but the stipulation shows that the amount withdrawn was equal to but did not exceed that sum.

While it is not entirely clear from the stipulation and exhibits, it now appears from the briefs of counsel, confirming the point developed in the oral argument, that the Commissioner in computing the whole of the 1929 tax applied the 12½% rate applicable to capital gains, not only on the item of $55,386.67 now in dispute representing the Commissioner's determination of the taxpayer's profit for the period March 1, 1913 to September 30, 1928 (that being the proper rate therefor if taxable at all), but also applied the same rate on the item of $7,548.57, the taxpayer's share of the partnership profit. This again would seem to be an inconsistent theory because the asset sold had been held by the new partnership for less than two years; and therefore the item of $7,548.57 should have been taxed as ordinary income at a higher rate. This view is now conceded to be correct in the reply brief for the plaintiffs and according to their computation the tax on this item should be increased in the amount of $868.09, which sum should be *deducted* from the principal amount, recovery of which is claimed by the plaintiff in this case.

*I conclude therefore that as a matter of law* the taxpayer is entitled to recover the amount of the overpayment sued for (with the deduction above indicated), together with interest thereon from the time of payment. Counsel for the taxpayer may submit the form of judgment to be entered in accordance with the special applicable procedure, with particular reference to the calculation of interest due, after approval of the form thereof and the figures therein by counsel for the Government.

The stipulation referred to is to be taken as the findings of facts. Counsel for the taxpayer has submitted requests for rulings on legal propositions which it is unnecessary to pass on in view of the full discussion herein contained.