## SHWAB, EXECUTOR OF DICKEL, *v.* DOYLE, UNITED STATES COLLECTOR OF INTERNAL REVENUE FOR THE FOURTH COLLECTION DISTRICT OF MICHIGAN.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 200.  Argued April 17, 1922.—Decided May 1, 1922.

1. Laws are not to be considered as applying to cases that arose before their passage unless that intention be clearly expressed. P. 534.
2. The Act of September 8, 1916, c. 463, § 202, 39 Stat. 777, imposed a tax on the transfer of the net estate of every decedent dying after its passage " to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death," excepting *bona fide* sales for a fair consideration in money or money's worth, and further declared, that " any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death." *Held,* that the act does not apply to transactions consummated before its passage. P. 534.
3. The reënactment of these provisions with an added provision that the transfer or trust should be taxed whether made before or after the passage of the act (February 24, 1919, c. 18, § 402 (c), 40 Stat. 1097) is not a construction of the earlier act as retroactive but the expression of a new purpose. P. 536.
4. Tax measures are strictly construed. P. 536.
269 Fed. 321, reversed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment for the defendant in error in an action to recover a sum exacted by him as an estate tax.

*Mr. Willard F. Keeney* and *Mr. John J. Vertrees,* with whom *Mr. Julius H. Amberg, Mr. Roger C. Butterfield* and *Mr. William O. Vertrees* were on the briefs, for plaintiff in error.

Mr. *James A. Fowler*, Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for defendant in error.

The act is within the taxing power of Congress.

It plainly intends to cover transfers made before its passage.

The words "at any time" have often been construed and given a broad signification. *Appeal of Snyder*, 95 Pa. St. 174; *New Rochelle* v. *Clark*, 65 Hun, 140; *Raymond* v. *Wathen*, 142 Ind. 367; *Cohen* v. *Burgess*, 44 Ill. App. 206; *Slaughter* v. *Moore*, 2 Del. Ch. 350.

Statutes having a retroactive effect were familiar when this law was passed. See English Succession Duty Act of 1853, 16 and 17 Vict., c. 51, §§ 2, 10, as construed in *Wilcox* v. *Smith*, 4 Drew. 50; *Attorney General* v. *Fitzjohn*, 2 H. & N. 465; *Attorney General* v. *Lord Middleton*, 3 H. & N. 125; Succession Duty Act, passed by Congress in 1864, c. 173, §§ 126, 150, 13 Stat. 223, 287, 291, as construed in *Wright* v. *Blakeslee*, 101 U. S. 174; English Customs and Inland Revenue Act of 1881, 44 and 45 Vict., c. 12, § 38, subsec. (a), par. (a); 52 and 53 Vict., c. 7, § 11, subsec. (1), construed in *Attorney General* v. *Booth*, 63 L. J., Q. B. 356; *In re Foster*, 1 Ch. [1897] 484; *In re Beddington*, Ch. Div. [1900] 771; Finance Act of 1894, 57 and 58 Vict., c. 30; Finance Act of 1909–1910, Edw. VII, c. 8, § 59 (1).

A statute which clearly imposes a retroactive tax will be sustained. *Stockdale* v. *The Insurance Companies*, 20 Wall. 323, 331, 332; *Wright* v. *Blakeslee*, 101 U. S. 174, 176, 177; *Cahen* v. *Brewster*, 203 U. S. 543, 549; *Billings* v. *United States*, 232 U. S. 261; *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 20; *Chanler* v. *Kelsey*, 205 U. S. 466, 473, 479.

The insertion in the Act of 1919, 40 Stat. 1057–1097, of the specific provision requiring that transfers made in contemplation of death shall be included " whether such

transfer or trust is made or created before or after the passage of this act," was intended as a legislative construction of the previous act, and was not intended to include a *casus omissus.  United States* v. *Field,* 256 U. S. 257, and *Smietanka* v. *First Trust & Savings Bank,* 257 U. S. 602, do not apply, because the specific provisions of the later acts there construed were not embraced in the general provisions of the former act, while here the contrary is true.   This case is governed by *Bailey* v. *Clark,* 21 Wall. 284, 288; *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1, 21; *Wetmore* v. *Markoe,* 196 U. S. 68, 77; *United States* v. *Coulby,* 251 Fed. 982, 985; *Matter of Reynolds Estate,* 169 Cal. 600.

The statute did not contemplate that a fraudulent motive to avoid the payment of taxes was necessary for the transfer to be taxable.   Ross on Inheritance Taxes, § 111.

The phrase " in contemplation of death " does not refer exclusively to gifts *causa mortis,* nor alone to gifts made under the apprehension of death arising from some present disease or some other impending peril.

The court did not err in directing the jury to consider the presumption declared by the statute that the trust was created in contemplation of death if made within two years before the death.

*Mr. Garret W. McEnerney,* by leave of court, filed a brief as *amicus curiae.*

MR. JUSTICE McKENNA delivered the opinion of the court.

Augusta Dickel by a deed dated April 21, 1915, assigned and delivered to the Detroit Trust Company, stocks, bonds or securities of the declared value of $1,000,000— with all their unmatured coupons, and the proceeds to be derived therefrom, both principal and income, in trust to invest and reinvest and to pay the net income for life to

Victor E. Shwab or on his written order. After his death the net income was directed to be paid to six beneficiaries, his children. A power of delegating and selling or exchanging all securities was given to Shwab, and of reinvestment. During the life of Shwab the net income was to be paid to him or his order. After his death the trust was to continue during the lives of the beneficiaries and the net income was to be paid to them during their respective lives in equal shares.

There were other rights and powers given to plaintiff and the beneficiaries not necessary to mention.

The trust deed was accepted by the Detroit Trust Company on or before June 3, 1915.

Augusta Dickel died September 16, 1916, possessed of an estate of $800,000. Seven days before her death Congress passed an act entitled, "Estate Tax Act", 39 Stat. 777–780. The act provided that, according to certain percentages of the value of the net estate, a tax was to be imposed upon the transfer of the net estate of every decedent dying after the passage of the act, "to the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title; . . ."

Under the assumption that the act was applicable to the deed made by Augusta Dickel to the Detroit Trust Company, a tax was assessed and exacted from plaintiff in error (here called plaintiff) in the sum of $56,548.41.

Plaintiff paid it under protest and then to recover it brought this action in the District Court of the United States for the Western District of Michigan, Southern Division.

A jury being impaneled to try the case, the plaintiff presented his contentions in requests for charges. These were: (1) To find for plaintiff. (2) Upon refusal of the court to so charge but not otherwise, that the deed of Mrs. Dickel to the Detroit Trust Company took effect more than a year before the enactment of the Act of September 8, 1916, that is, took effect immediately, not in possession or enjoyment at or after the death of Mrs. Dickel. (3) The words " in contemplation of death " do not refer to that general expectation of death which every mortal entertains, but rather the apprehension which arises from some existing condition of body or some impending peril. (4) If Mrs. Dickel when she made the trust deed was not in that apprehension arising from that condition of body or of an impending peril, it was not made in contemplation of death within the meaning of the act of Congress. (5) Mrs. Dickel having made the deed before the act of Congress was passed, her purpose was not to defeat or evade the Federal Revenue Law.

There were other requests for instructions to the jury not material to be considered except that the act of Congress was not retrospective in character and, therefore, did not impose a tax on the deed from Mrs. Dickel to the Trust Company. And that if it could be considered to have that character and effect, it would be unconstitutional and void as a denial of due process of law, and the taking of private property for public use without just compensation, contrary to the Fifth Amendment of the Constitution of the United States.

The court ruled against all of the requests so far as the court considered them as presenting questions of law, but considered that whether the trust deed was made in con-

templation of death was a question for the jury and submitted it to them, with aiding and defining explanations, and concluded by declaring, "the whole question is the question whether the transfer was made in contemplation of death; that is all there is to it."

The verdict of the jury was in favor of the defendant, upon which judgment was duly entered. It was affirmed by the Circuit Court of Appeals (269 Fed. 321), to the action of which this writ of error is directed.

Plaintiff urges against the judgment of the Circuit Court of Appeals all of the contentions presented in his requests made to the District Court for instructions to the jury, but so diverse and extensive consideration is only necessary if the act of Congress be of retrospective operation. To that proposition we shall, therefore, address our attention.

The initial admonition is that laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared. 1 Kent. 455; *Eidman* v. *Martinez,* 184 U. S. 578; *White* v. *United States,* 191 U. S. 545; *Gould* v. *Gould,* 245 U. S. 151; Story, Const., § 1398. The comment of Story is, "retrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact."

There is absolute prohibition against them when their purpose is punitive; they then being denominated *ex post facto* laws. It is the sense of the situation that that which impels prohibition in such case exacts clearness of declaration when burdens are imposed upon completed and remote transactions, or consequences given to them of which there could have been no foresight or contemplation when they were designed and consummated

The Act of September 8, 1916, is within the condemnation.

There is certainly in it no declaration of retroactivity, "clear, strong and imperative", which is the condition expressed in *United States* v. *Heth,* 3 Cranch, 398, 413; also *United States* v. *Burr,* 159 U. S. 78, 82–83.

If the absence of such determining declaration leaves to the statute a double sense, it is the command of the cases, that that which rejects retroactive operation must be selected.

The circumstances of this case impel to such selection. If retroactivity be accepted, what shall mark its limit? The Circuit Court of Appeals found the interrogation not troublesome. It said, "Congress would, we think, scarcely be impressed with a practical likelihood that a transfer made many years before a grantor's death (say 25 years, to use plaintiff's suggestion) would be judicially found to be made in contemplation of death under the legal definition applicable thereto, and without the aid of the two years *prima facie* provision." In other words, the sense of courts and juries, good or otherwise, might, against the words of the statute, and against what might be the evidence in the case, unhelped by the presumption declared, fix the years of its retrospect. This would seem to make the difficulty or ease of proof a substitute for the condition which the statute makes necessary to the imposition of the tax, that is, the disposition with which the transfer is made; and certainly whether that disposition exist at an instant before death or years before death, it is a condition of the tax.

The construction of the Government is more tenable though more unrestrained. It accepted in bold consistency, at the oral argument, the challenge of twenty-five years, and a ruling of the Commissioner of Internal Revenue, in bolder confidence, extends the statute to "transfers of any kind made in contemplation of death *at any time whatsoever* [italics ours] prior to September 8, 1916." The sole test in the opinion of that officer is

"the date of the death of the decedent." He fixes no period to the retrospect he declares, but reserves, if he be taken at his word, the transfers of all times to the demands of revenue. In this there is much to allure an administrative officer. Indeed, its simplicity attracts anyone. It removes puzzle from construction and perplexity and pertinence on account of the distance of death from the transfer, risking no chances of courts or juries, in repugnance or revolt, taking liberties with the act to relieve from its exactions to satisfy the demands of revenue.

If Congress, however, had the purpose assigned by the Commissioner it should have declared it; when it had that purpose it did declare it. In the Revenue Act of 1918, 40 Stat. 1097, it reënacted § 202 of the Act of September 8, 1916, and provided that the transfer or trust should be taxed whether "made or created before or after the passage of" the act. And we cannot accept the explanation that this was an elucidation of the Act of 1916, and not an addition to it, as averred by defendant, but regard the Act of 1918 rather as a declaration of a new purpose; not the explanation of an old one. But granting the contention of the defendant has plausibility, it is to be remembered that we are dealing with a tax measure and whatever doubts exist must be resolved against it.

This we have seen is the declaration of the cases and this the basis of our decision, that is, has determined our judgment against the retroactive operation of the statute. There are adverse considerations and the Government has urged them all. To enter into a detail of them or of the cases cited to sustain them and of those cited to oppose them, either directly or in tendency, and the examples of the States for and against them, would extend this opinion to repellent length. We need only say that we have given careful consideration to the opposing argument and cases, and a careful study of the text of the act of Congress, and have resolved that it should be not construed to apply to

transactions completed when the act became a law. And this, we repeat, is in accord with principle and authority. It is the proclamation of both that a statute should not be given a retrospective operation unless its words make that imperative and this cannot be said of the words of the Act of September 8, 1916.

*Judgment reversed.*