CARNILL v. McCAUGHN, Internal Revenue Collector.

District Court, E. D. Pennsylvania. February 13, 1929.

No. 13682.

Joseph L. McAleer, of Philadelphia, Pa., for plaintiff.

Mark Thatcher, Asst. U. S. Atty., of Philadelphia, Pa., William T. Sabine, Jr., Asst. Gen. Counsel, of Washington, D. C., and George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. A ruling in this case was withheld until counsel could incorporate in their briefs cases pending at the time of the argument of this case. The pending cases have been decided, and we now have these briefs.

The complaint out of which the cause of action arises is the unlawful exaction of a tax payment. Following the Pennsylvania Practice Act of 1915 (Pa. St. 1920, § 17181 et seq.) the defendant has set up the lawfulness of the tax. A demurrer issue is thus raised. The pertinent facts are that plaintiff's decedent in his lifetime made a transfer of property to a trustee, reserving to himself the income from the property during his life, the remainder going at his death to named beneficiaries. The interests of the latter were vested and absolute, and there was no power of revocation or control over the gift retained by the donor.

The pertinent dates are: (1) Date of creation of trust, August 13, 1920. (2) Effective date of Tax Act, June 2, 1924. (3) Date of death, July 12, 1925.

We have had the benefit of a full discussion of the questions deemed to arise presented by experienced counsel, who qualify as experts in tax cases. It is because of this that we, with very great diffidence and not a little hesitation, have made the ruling of the case to turn upon a question which not only counsel for plaintiff does not raise, but which counsel for plaintiff and for defendant agree

is out of the case. The compulsion of conviction, however, leaves us no choice but to adhere to the view we have taken.

As we view it there are three questions which the case presents: (1) Was the transfer here "intended to take effect in possession or enjoyment at or after the death" of the grantor, within the meaning of the Tax Act of 1924? (2) Do the provisions of the law apply to transfers made before the passage of the act? (3) If so, is the act in this feature constitutional?

The respective counsel agree in ignoring the second question. As we view it, this controls, and the answer we make to it renders it unnecessary to discuss either of the other questions, except in so far as the first throws light upon the second. As, however, it would be ungracious to put upon counsel the burden of defending a judgment based upon what he thought to be untenable grounds, and as a different answer to the second question than that which we make would leave the whole case unruled, we include the others in the discussion. We assume counsel for plaintiff will be able to reconcile himself to the conclusion we have reached on the theory that, although it does him no good, it does him no harm.

The general scheme of taxation which is sought to be enforced by the act of 1924 (43 Stat. 253) was put into effect in 1916 (39 Stat. 756) in the modern development of it. Whether the appropriate name of the tax is an estate tax, transfer tax, succession or inheritance tax, or an excise tax, measured by the value of the estate passing at death, the primal thought was to impose it, based upon the estate of the decedent at the time of his death. This is still the primal thought, and is expressed in section 301 of the present act (26 USCA § 1092). If the tax acts stopped here, what constituted the estate of a decedent would be determined by the state laws, and be in practical effect under the control of the taxpayers. The effect of this upon the tax payments called for a succession of additional provisions in the tax laws.

Following them, not chronologically, but in the order set forth in the act of 1924, we have the general fact situation that an owner of property, for the purpose of cutting down the tax payment, might before his death grant away estates or interests in his property. We thus have (1) the provision that, if at any time he has transferred his property in contemplation of his death, the value of such property shall be deemed, for tax purposes, to form part of his estate, and a transfer within two years of death was presump-

tively such a transfer. There was then (2) provision made for the possible situation of a practically testamentary disposition of property at the death of decedent, through the device of a transfer to take effect at or after the death of the grantor. This was met by the provision that a transfer "intended to take effect in possession or enjoyment at or after the death" of the grantor should likewise, for tax purposes, form part of his estate. There was still (3) the possible situation of a transfer in trust absolute in form, but over which, by the reservation of a power of revocation or the like, the grantor retained control of the final disposition of the property as fully as if the transfer had not been made; and finally (4) there was the situation of the release of such an existing power by the grantor in contemplation of his death.

The taxing situation thus became this: A tax was payable based upon the estate of a decedent as the law of the domicile of the decedent determined that estate to be, but that estate was, for taxing purposes, to have added to it, in the determination of what it was, the value of any property of which the decedent in his lifetime had made a transfer under any one of the four situations above outlined.

With respect to situations (1) and (4), we assume that no question of the application of the act arises, because they are aimed at what is nothing else than a plain attempt to evade the payment of a tax by a gift causa mortis. So, likewise, with respect to situation (3), because there the gift was gift or no gift at the will of the grantor, as fully to all practical intents and purposes as if no transfer had been made. Whether it was such transfer was not determined until "at or after the death" of the grantor.

▉▉ Respecting, however, situation (2) we have reached the conclusion (with, as we have said, great diffidence, because thus far we have found no one to agree with us) that it applies only to transfers made after the law was enacted. Evil consequences resulting from a law, whether foreseen or unforeseen, do not abrogate the law; but it has always been an accepted canon of construction that the effects and consequences are accepted as guiding lights in the interpretation of a statute.

Since the impressive recital of the evil consequences of a retroactive statute in cases such as the instant one, which was voiced in the opinion in Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081, Congress may be presumed by an-ticipation to have had them in mind. There is a situation so common to the experiences of all lawyers that Congress must have had it presented. A man or woman having in contemplation a second marriage, and wishing to assure the children of the first marriage of their fair share of his or her estate, creates a trust for their benefit, reserving a life estate and the fair share of the second spouse and possible children by the second marriage. Surely there is nothing unlawful, nor anything against public policy, in such an arrangement. If there is anything in an existing law subjecting the remaining estate to a tax, measured by including the value of that with which the grantor has parted, he can provide for this by imposing a condition upon the gift; but, if a law thereafter made subjects his remaining estate to such a tax, the effect may be to greatly reduce, if it does not wholly absorb, the estate he leaves. Indeed, the estate may be rendered insolvent. How real this is the instant case illustrates, because here the estate for distribution is reduced to the extent of nearly a quarter of a million dollars.

The phrase relied upon to give a retroactive effect to this act is, "has at any time created a trust." The full phrase is "has at any time created a trust in contemplation of" death. It is true that this is coupled with transfers intended to take effect at death, so that the quoted phrase may be read as applicable to either; but the question is, Should it be so read? Among the reasons for not so reading it is that we have such legislative interpretation. Before the Coolidge Case was ruled, every tax act interpolated or added parenthetically after the "intended to take effect" class of transfers the words or equivalent words, "whether such transfer was made before or after the passage of this act." This meant that Congress did not understand the words "has at any time" to include trusts such as now before us. This is the doctrine of Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454, and Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934.

Another and very persuasive reason is that, after the Shwab Case, Congress dropped the "before or after" clause from the act of 1924. This omission is, as we view it, in itself a supporting reason for construing the act of 1924 not to apply to transfers made or trusts created before the Tax Act was passed. Congress meant this, or it meant that, not having imposed a tax on out and out absolute gifts not made in contemplation of death, it would not impose a tax on a like

gift of a remainder interest or estate in property. As it did not tax the greater, it would not tax the less. The reasoning of the opinion in the Frick Case, we think, is decisive of this. There the Tax Act was before the inclusion of the clause in question. Here it is after the clause was dropped.

For the reason before given, although at the cost of extending an already over long opinion, we pass to the first question propounded. Was the transfer here "intended to take effect in possession or enjoyment at or after" the death of the grantor? We have two truths before us. We have the one that under the law of Pennsylvania the estate or interest of the beneficiaries of this trust was in no way related to the life estate of the grantor, otherwise than in the coincidence that the actual possession and present enjoyment of the one began when that of the other ended; also that the two estates had no relation, other than that one was a life estate and the other a vested remainder in the same property. The other is that the actual possession and present enjoyment of the property by the beneficiaries was in fact and real truth deferred until the death of the grantor. What has really happened in the case of trusts like the present is that possession and enjoyment, which is an incident of ownership, has been divided between the life tenant and the remainderman.

The defendant relies, as he is justified in doing, upon (inter alia) two cases ruled by the Circuit Court of Appeals for the Third Circuit: McCaughn v. Girard (C. C. A.) 11 F.(2d) 520; May v. Heiner (D. C.) 25 F. (2d) 1004, affirmed without opinion 31 F. (2d) ——.[1]

In the first case the Tax Act then in force based the tax upon any "interest." The trial court held this to be a word of art, or law term, which was the equivalent of "estate," and, as the estate of the remainderman was vested, he had all and everything by the grant which took "effect" when made, so that there was nothing to pass at the death of the life tenant, and nothing thereby added to the estate granted by the transfer previously made. The appellate court refused to accept this view, but, as Judge Thomson afterwards very happily paraphrased it, held to the other view, that the question was not what estate or interest as a matter of legal or equitable title the donee had in the property, but what "situation" was created for him in respect to when he came into the present enjoyment of the property. The tax was imposed upon the basis of the transferred property being

[1] Rehearing pending.

included in the estate, not because it formed a part of the decedent's estate, but because Congress had directed that for tax purposes it should be treated as if so included.

Here these two truths are present, because there was a vested remainder and a life estate in the same property. The doctrine of the Girard Case would in consequence apply. The real question is whether there has not been, since the Girard Case, a modification of the doctrine there (and in many other cases) laid down, particularly since the rulings in the Coolidge Case, supra, and in Reinecke v. Northern Trust Co., 49 S. Ct. 123, 73 L. Ed. ——, and Chase v. United States, 49 S. Ct. 126, 73 L. Ed. ——, opinions which have just been handed down. We think there has been this modification.

Without prolonging the discussion, the doctrine now is that a given property may be included for tax purposes, to base the tax imposed (1) if the property forms part of the descendent's estate; (2) if it has been transferred in "contemplation of death" in attempted evasion of the tax; (3) if the death of the decedent renders the transfer of the property complete and absolute, which before that was not complete as, for illustration, when a trust is created subject to a power of revocation or the like in the decedent, and (4), which is really included in the second, if such power of revocation be released in contemplation of death. This excludes as a basis for the tax (1) transfers made for a consideration; (2) transfers made by way of an out and out gift not in contemplation of death; (3) transfers by way of a gift of the remainder after a life estate reserved, when the gift is not in contemplation of death, is absolute, and the decedent up to the time of his death had no power of control over or to direct the course of distribution of the property by his action or non-action.

The property here in question is of the third above class, and the tax payment was in consequence unlawfully exacted. These later cases are in no sense in conflict with the Coolidge Case.

The final conclusion reached is that the questions of law raised should be ruled against the defendant. This we assume means that the plaintiff should have judgment. We make, however, now no formal order, but grant leave to the parties to submit such order as they may agree is in accordance with this opinion, reserving jurisdiction of the cause to make such formal order, if the parties do not agree thereon.