## SOUTHERN CALIFORNIA BOX CO. v. UNITED STATES.

**No. J–584.**

Court of Claims.

Feb. 9, 1931.

Robert A. Littleton, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., on the brief), for plaintiff.

Lisle A. Smith, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, C. J., and GREEN, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

Plaintiff brings this suit to recover an alleged overpayment upon its income and profits taxes for the year 1920. The case turns on the question of whether the plaintiff, in returning its income for that year, was entitled to make a deduction of $27,536.70 on account of a loss alleged to have been sustained that year through transactions with one A. D. Hill.

The evidence shows that about October 16, 1918, plaintiff entered into a contract with Hill whereby plaintiff was to advance money to Hill from time to time as it became necessary to enable Hill to construct and operate a sawmill, and Hill was to deliver the lumber from the sawmill to plaintiff at prices specified in the contract. In case Hill failed to cut and deliver the lumber as called for under the contract, the plaintiff had the right to demand immediate reimbursement for the moneys advanced, and, in event of failure to repay the same, had the right to take over the plant and operate the same until plaintiff was fully reimbursed for all sums outlaid by it. About January 5, 1920, there was due the plaintiff from Hill, for money advanced after allowing credit for all lumber delivered under the contract, the sum of $39,786.70, and plaintiff ascertained that no part of this money could be recovered from Hill, as he was insolvent. In the meantime, Hill had disappeared and left no assets with the exception of the sawmill plant. Plaintiff took over the sawmill and equipment, appraised it at $12,250, credited Hill with this amount on its books, and charged the balance off as a bad debt. For a short time it operated the sawmill, but finding the operation thereof unprofitable it was abandoned. How much plaintiff lost in the operation is not disclosed by the evidence. Plaintiff, after making some additions to the sawmill, offered it for sale at about the price at which it had been appraised but received no offers whatever until about April, 1922, when it was sold for $5,000, payment to be in monthly installments.

In making its income and profits tax return for 1920 plaintiff took a deduction of the difference between the appraised value of the sawmill and the total amount of the indebtedness of Hill, but the Commissioner of Internal Revenue after having reviewed this return refused to allow this deduction and assessed against the plaintiff an additional tax for the year 1920 in the sum of $4,902.39, which plaintiff paid about November 6, 1926, together with $69.17 interest accrued thereon. In due time plaintiff filed an application for a refund of the amount so paid as additional tax, which claim was rejected by the com-

missioner. The grounds of the claim were that the plaintiff had sustained a loss in the said year of $27,536.70 on the transactions with Hill in the manner stated above, and that this debt was worthless and had been charged off on its books during that year. The plaintiff consequently claimed a deduction from its income in that amount, which the commissioner refused to allow and assessed the additional tax which is now in controversy.

The evidence leaves no doubt that plaintiff sustained a loss in at least the amount for which it claimed a deduction, but it is contended on behalf of the defendant that plaintiff is endeavoring to obtain a deduction on account of a partial charge-off of a bad debt which was not permitted by the revenue act of 1918 in force at that time. Also, that security was given for the loans made to Hill, and that no deduction was allowable until the security was liquidated, which was not until April, 1922. In short, it is insisted on behalf of the defendant that the law did not provide for the deduction that was made, and that in any event it could not be made for the year 1920.

In support of the contention that the law in force at the time did not permit a partial charge-off of the debt, counsel for defendant have cited a number of decisions made by the Board of Tax Appeals. The language used in some of these decisions might, when considered separately from the facts to which it was applied, indicate that under the 1918 act a part merely of a debt could not be charged off; but we think that this language was intended to apply to the particular facts which were under consideration, which were very different from those in the case at bar. We are quite clear also that if a part of a debt be paid or satisfied in some kind of a way and the remainder is worthless, a loss or a bad debt allowance may be allowed as a deduction under the 1918 act as well as under the later revenue law. This view is sustained by several decisions of the Board of Tax Appeals. The case of the Cornelius Lumber Co., 5 B. T. A. 215, is exactly parallel to the one at bar. In that case it appeared that the taxpayer had made advances to the Sycamore Plantation Company, which were to be repaid by lumber to be furnished by it. The contract between the parties provided that in event of failure of the plantation company to fulfill its part of the contract, the taxpayer should take possession of all the lumber on hand and apply the same against the advances theretofore made. The plantation company became insolvent and ceased operations in November, 1920, and the taxpayer took possession of the lumber and found it was of a certain value. The board held that it had sustained a loss of the difference between the amount advanced and the value of the lumber taken over. In the case of Kansas City Pump Co., 6 B. T. A. 938, it appeared that in 1913 the debtor dissolved and its assets passed to the taxpayer to apply on what was owed. The board held that: "The loss resulting from the debts owed to petitioner by the Denver Pump & Plumbing Co. was sustained at the time the assets of the latter were transferred in satisfaction of its obligations. The remainder of the debt, not satisfied by the assets received, was a loss sustained in 1913." In the case at bar the plaintiff, pursuant to its contract, in 1920 took over the sawmill and credited the debtor on its books with an amount which the evidence shows to be much more than the property could be sold for. But having given the debtor credit for this amount before any sale was made, the debt was satisfied to the extent of that credit. The only claim which it then had against the debtor Hill was for the balance remaining after this credit had been allowed. Hill was insolvent, his whereabouts were unknown, and he left no other property. Under the circumstances it can be fairly said that plaintiff had ascertained this balance unpaid on the debt to be worthless and was justified in charging it off in the year 1920. It is immaterial for the purposes of the case whether this balance is treated as a bad debt or as a business loss. All bad debts are losses, although not always a business loss, nor are business losses always bad debts, but in this particular instance the balance owing from Hill to plaintiff was both a bad debt and a business loss. It is said in argument that plaintiff charged this balance off as a bad debt and not as a business loss, but for the reasons stated it is immaterial how it is treated in this respect. In the circumstances of this case the plaintiff did not make a partial charge-off of a debt. The obligation of Hill had been satisfied in part and the debt had accordingly been reduced. The entire amount remaining due was determined to be worthless and charged off. It was, therefore, a proper deduction.

For the reasons stated above, we hold that the commissioner was in error in making the additional assessment and that plaintiff is entitled to recover the amount paid by reason thereof, with interest. Judgment will be entered accordingly.