## ALBERS v. REINECKE.

### No. 6214.

Circuit Court of Appeals, Seventh Circuit.

Nov. 10, 1937.

William R. Brown, and W. Robert Brown, both of Chicago, Ill., for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key and F. E. Youngman, Sp. Assts. to the Atty. Gen., and Michael L. Igoe, U. S. Atty., of Chicago, Ill., for appellee.

Before FVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decision of the District Court denying appellant's claim for refund in the amount of $10,095.38, with certain interest thereon, asserted to have been illegally collected for the year 1920. The controversy involves a construction of section 234 of the Revenue Act of 1918 (40 Stat. 1077) as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(5) Debts ascertained to be worthless and charged off within the taxable year."

A jurisdictional question raised in the court below was abandoned by appellee during oral argument before this court.

There is no dispute as to the facts as they were stipulated. Briefly and so far as pertinent to the question presented, they are as follows: During the year 1920, there was owing to the taxpayer by the Manufacturers & Retailers Company, a West Virginia corporation, $28,000 unsecured, and $6,500 secured by warehouse receipts on certain merchandise. The debtor, finding itself in financial difficulties, in September, 1920, determined to close out and liquidate its business and on November 5, of said year, by written agreement, transferred all its property of every kind to James J. Pesecka, as trustee, with full power to sell and dispose of the same and pay the proceeds, after deducting expenses, ratably to the creditors of the company. James J. Pesecka was at that time, and during said trusteeship, president of the taxpayer and, as such trustee, he immediately accepted the trust and took possession of all the property of the company. The taxpayer, who was the largest creditor, assented to said transfer and accepted the provisions of the written agreement. The trustee proceeded to liquidate, sell, and dispose of the property as provided in the agreement, the sale of which was completed during the year 1921, at which time it was determined the taxpayer's share of the proceeds, on its unsecured notes, after deducting selling expenses, was $8,851.33. The collateral merchandise was disposed of in March, 1921, for $3,250. It will be noted that the actual loss sustained by the taxpayer as determined in 1921 was $22,398.67. Included in the stipulation is the following paragraph: "13. On December 15, 1920, James J. Pesecka made a report to the bank as trustee, showing his inventory and appraisement of the trust property. Thereupon, James J. Pesecka, as president of the Depositors State Bank advised the Board of Directors that the value of the Bank's interest in the trust property and canned salmon and canned corn would not exceed $14,500 and that the bank had suffered a loss of $20,000 on these transactions. Whereupon, upon motion duly made and seconded, the officers were instructed to transfer $20,000 from undivided profits to contingent fund to cover the loss on the loans to the Manufacturers and Retailers Company."

It is upon this situation that the taxpayer claims it was entitled to a deduction of $20,000 as a "debt ascertained to be worthless and charged off within the taxable year."

Appellee relies upon the decision of the Supreme Court in Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200, as determinative of the question presented, while appellant claims the facts in that case are so different that the rule there announced is not applicable and cites a number of decisions of courts and the Board of Tax Appeals, chief of which is Southern California Box Co. v. U. S. (D. C.) 46 F.(2d) 724, as sustaining its position. We are thus immediately confronted with the question as to whether the opinion in the Spring City Foundry Case is controlling. If so, we are bound by it and there is no occasion to discuss other cases which hold or seem to hold to the contrary. In the case before the Supreme Court there was owing the taxpayer by one of its creditors a sum represented by open account and unsecured notes. The creditor, finding itself in financial straits, endeavored to effect a settlement, but being unable to do so, was, on December 23, 1920, adjudicated a bankrupt and a receiver appointed. Dividends were paid by the receiver at different times, the final one in the year 1922. The taxpayer claimed as a deduction in its income tax return for the year 1920, the entire debt. The Board of Tax Appeals allowed the deduction in an amount which represented the difference between the entire debt and that which the taxpayer finally received in dividends. This court (67 F.(2d) 385) reversed the order of the Board and held the taxpayer was not entitled to such deduction. The Supreme Court, in affirming this court, on page 186 of 292 U.S., 54 S.Ct. 644, 645, 78 L.Ed. 1200, said:

"The question, then, is whether petitioner was entitled to a deduction in 1920 for the portion of the debt which ultimately—on the winding up in bankruptcy—proved to be uncollectible. Such a deduction of a part of the debt, the Government contends and the Circuit Court of Appeals held, the act of 1918 did not authorize. The Government points to the literal meaning of the words of the statute, to the established administrative construction, and to the action of the Congress in recognition of that construction. 'Worthless,' says the Government, means destitute of worth,

of no value or use. This was the interpretation of the statute by the Treasury Department. Article 151 of Regulations 45 (made applicable to corporations by Article 561) provided that 'An account merely written down' is not deductible. To the same effect was the corresponding provision of the regulations under the Revenue Act of 1916.

"The right to charge off and deduct a portion of a debt where during the taxable year the debt was found to be recoverable only in part, was granted by the Revenue Act of 1921. By that act, section 234(a) (5), 42 Stat. 254, was changed so as to read: 'Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.' We think that the fair import of this provision, as contrasted with the earlier one, is that the Congress, recognizing the significance of the existing provision and its appropriate construction by the Treasury Department, deliberately intended a change in the law. Shwab v. Doyle, 258 U.S. 529, 536, 42 S.Ct. 391, 393, 66 L.Ed. 747, 26 A.L.R. 1454; Russell v. United States, 278 U.S. 181, 188, 49 S.Ct. 121, 123, 73 L.Ed. 255.

"This intent is shown clearly by the statement in the report of the Committee on Ways and Means of the House of Representatives in relation to the new provision. The Committee said explicitly: 'Under the present law worthless debts are deductible in full or not at all.' While the change was struck out by the Finance Committee of the Senate, the provision was restored on the floor of the Senate and became a law as proposed by the House. Regulations 62 issued by the Treasury Department under the act of 1921 made a corresponding change in Article 151. The Treasury Department consistently adhered to the former rule in dealing with deductions sought under the act of 1918. * * *

"We are of opinion that section 234(a) (5) of the Revenue Act of 1918 authorized only the deduction of a debt ascertained to be worthless and charged off within the taxable year; that it did not authorize the deduction of a debt which was not then ascertained to be worthless but was recoverable in part, the amount that was not recoverable being still uncertain."

Appellant insists this opinion is not controlling for the reason the situation arose out of a bankruptcy proceeding, and, under such circumstances, title to the bankrupt's property vested by operation of law in the trustee and that the creditor obtained no interest in such, other than his rights to dividends, while, in the case at bar, upon the acceptance of the assignment, the creditor became vested with an interest in the debtor's property, or, in other words, there was merely an exchange of the debtor's property for what was owing by it to the creditor. A number of authorities are cited to the effect that an assignment establishes a trust for the benefit of the creditors which is enforceable in a court of equity. These authorities, however, throw little, if any, light upon the question with which we are dealing. Even if it be conceded that the creditor obtains an equitable interest in the assigned property, it does not follow that the property is received by the creditor in satisfaction of the debt or any part of it. Whatever trust was created by the assignment in the instant case must be measured by the terms of the instrument which created it. By the very terms of the assignment, debtor's property was placed in the hands of a trustee "with full power to sell and dispose of the same and pay the proceeds, after deducting expenses, ratably to the creditors of the company." Thus, by agreement of the parties, the trustee was charged with precisely the same duties and responsibilities as are placed upon a receiver or trustee in bankruptcy, by operation of law. The fact that the trustee, who was also president of appellant bank, made a report to his directors that its loss "would not exceed $14,500" cannot be regarded as a final or conclusive determination of the loss sustained. That fact could not be determined until the terms of the trust agreement had been carried into effect. This situation is not essentially different from one growing out of bankruptcy with which the Supreme Court was dealing. We see no reason why the debtor could not estimate his loss in one instance as well as the other; in either case the loss could not be definitely determined before final action by the trustee. In bankruptcy proceedings, the dividends received represent the creditor's proportionate share of the bankrupt's estate after the payment of the costs of administration. In the instant case, under the assignment agreement, the amount received by the taxpayer was to be determined and in fact was determined by its proportionate share of the net proceeds. In the Supreme Court case, as well as the present case, the proceeds were not determined until a subsequent year. In the instant case, the estimated loss as reported by the trustee to the taxpayer was not as great as was determined the following year when the merchandise was sold and the proceeds divided. Subsequent events proved the loss greater than claimed, while in the Supreme Court case, subsequent events proved the loss less than claimed.

We reach the conclusion there is nothing in the facts here presented by which this case can be distinguished from that of Spring City Foundry Co. v. Commissioner of Internal Revenue, supra, and that the law as therein announced must control.

Judgment affirmed.