## STRATEGICAL DEMOLITION TORPEDO CO., Inc. v. UNITED STATES.

### No. 444–52.

United States Court of Claims.

Decided March 3, 1953.

Frank E. Scrivener, Washington, D. C. (Charles K. Davies, Jr., Gaithersburg, Md., on the briefs), for the plaintiff.

G. M. Paddack, Washington, D. C., and Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff corporation sues to recover just compensation for the use by the Government of a type of demolition torpedo on which the plaintiff had a patent. The Government moves to dismiss the petition on the ground that the statute giving persons, situated as the plaintiff is, a right to sue, did not become effective until July 17, 1952, and that the plaintiff's patent had expired before that time. The Government says that the statute had no retroactive effect, and that, therefore, the plaintiff never acquired a right of action.

The plaintiff urges that Congress intended to give the statute a retroactive effect, to make it apply to situations such as that of the plaintiff where, within the period not barred by the Statute of Limita-

tions, the Government had made use of an invention covered by a patent which was still valid at the time of the Government's use, though both the use, and the expiration of the patent, antedated the enactment of the statute on which the claim is founded. To resolve this question of legislative intent, we recall some pertinent facts.

In a suit by this plaintiff against the Government, reported in 96 F.Supp. 315, 119 Ct.Cl. 291, the plaintiff alleged in its petition that the invention which led up to its patent had been made by four persons, one of whom, at the time of the invention, was an employee of the Government; that the four inventors had assigned their patent to the plaintiff, and that the Government had used the patented device. The Government moved to dismiss the petition on the ground that it disclosed on its face that there was no right to recover since the pertinent statute, 28 U.S.C. § 1498, said that there should be no right to sue the Government for the use of an invention discovered or invented by an employee of the United States during the time of such an employment or service. This court sustained the Government's motion and dismissed the plaintiff's petition. We held that an invention made by four persons, one of whom was, at the time, an employee of the United States, was an invention of an employee of the United States; that it was impossible to dissect out the part which the employee-inventor may have had in the invention and, by apportioning the compensation or otherwise, permit, in the face of the statute, a recovery for use of an invention so made. The Supreme Court denied certiorari. 342 U.S. 825, 72 S.Ct. 46, 96 L.Ed. 624.

At the plaintiff's instigation, there was introduced in the House of Representatives H.R. 3975, which, if enacted in the form in which it was introduced, would have changed the law as laid down by this court in our decision adverse to the plaintiff, and would have permitted those joint patentees who were not employees of the Government at the time of an invention, or their assignee, to sue, although one or more of their co-patentees were such employees. The Committee on the Judiciary, to which H.R. 3975 was referred, completely rewrote the bill. The only pertinent Committee Report is House Report No. 1726, April 7, 1952, to accompany H.R. 3975, reprinted in United States Code Congressional and Administrative News, 1952, No. 14, page 4280. As enacted July 17, 1952, it amended the fourth paragraph of 28 U.S.C. § 1498 by substituting the following language:

"A Government employee shall have the right to bring suit against the Government under this section except where he was in a position to order, influence, or induce use of the invention by the Government. This section shall not confer a right of action on any patentee of any assignee of such patentee with respect to any invention discovered or invented by a person while in the employment or service of the United States, where the invention was related to the official functions of the employee, in cases in which such functions included research and development, or in the making of which Government time, materials or facilities were used."

The 1952 enactment, then, did not affect at all the law as we applied it in our former decision. Instead, it provided that a Government employee, whether a joint inventor or a sole inventor, could recover from the Government for the use of his invention unless, at the time of its use, he was in a position to induce its use, or unless he was employed by the Government to make the invention or used Government time, materials or facilities in making it. The plaintiff alleges in its petition that none of the co-inventors of its device were covered by the disqualifying language of the new statute, and, for the purposes of this motion, we take this allegation to be true.

The Government urges that the 1952 enactment, like most legislation, simply made new law, and hence took effect only from the date of its enactment. Legislation is, of course, usually so construed. See Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858; Shwab v. Doyle, 258 U.S. 529, 42 S.Ct. 391, 66 L.Ed. 747.

In the case of Winfree v. Northern Pacific Railway Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518, the Court quoted with approval language of the Court of Appeals which said that statutes which had been given retroactive application had been:

" * * * such as were 'intended to remedy a mischief, to promote public justice, to correct innocent mistakes, to cure irregularities in judicial proceedings, or to give effect to the acts and contracts of individuals according to the intent thereof.' "

The statute in question here, to be sure, remedies what Congress must have regarded as a mischief, and must have been intended by Congress to promote public justice, but, in these regards, the statute cannot, we think, be distinguished from practically every piece of legislation which changes existing law. The other characterizations quoted above are not in any sense applicable to the instant situation.

The Supreme Court in the Winfree case, supra, also quoted with approval the following language, used by the Court of Appeals in giving reasons why the statute there in question should not have a retroactive application:

"It is a statute which permits recovery in cases where recovery could not be had before, and takes away from the defendant defenses which formerly were available,—defenses which, in this instance, existed at the time when the contract of service was entered into and at the time when the accident occurred."

This language seems to us to be applicable to the instant case.

The plaintiff urges that the 1952 statute merely gave Government employee-inventors remedies for rights which they possessed before its enactment. We think not. It could as well be said that during all the decades before the enactment of the statute creating this court and defining its jurisdiction, innumerable persons had rights against the Government, and that in the century and a half before the Government, in 1946, consented to be sued upon claims founded in tort, innumerable other persons

had rights against the Government. See The Western Maid, 257 U.S. 419, 433, 42 S.Ct. 159, 66 L.Ed. 299. The Government has elected to give its consent to be sued piecemeal. When it, in 1910, consented to be sued for its use of patented devices, it did not consent to be sued by certain Government employee-inventors or owners of patents. Such persons no more had rights than all the other countless persons adverted to above who could have sued the Government if the Government had, which it had not, consented to be sued in their types of cases.

We think, then, that the 1952 amendment made new law and created rights in a class of persons who if the law had not been changed, would have had no rights. On this basis, the accepted rules of construction require that the statute be given only prospective operation.

The fact that the plaintiff instigated the introduction in Congress of H.R. 3975, and that the Act of July 17, 1952, resulted from the Committee's consideration and amendment of H.R. 3975 tends to suggest that the legislative intent may have been, not only to make new law for the future, but to give relief to the plaintiff. However, H.R. 3975 as amended and enacted might not, so far as Congress seems to have been aware, have been of any benefit to the plaintiff. Congress refused to change the law, as laid down by this court, that an invention by four persons is an invention by each of the four, and that none of them or their assignees can recover for the use by the Government of the patent, if one or more of the inventors was in the employ of the Government in the capacity specified in the statute. Under the former statute, any employment at all by the Government put the patent outside the scope of the Government's consent to be sued. Under the new statute only specified kinds of Government employment did so. Unless, therefore, Congress was aware that the Government employee-inventor of the patent on which the plaintiff sues, as the petition in the instant case alleges, but the petition in the former case did not allege, was not employed by the Government in research

related to the patented device, and did not use Government time, materials, or facilities in its invention, Congress would not have supposed that the change in the law would improve the plaintiff's legal position. If Congress was not so aware, any impression that Congress probably intended to benefit the plaintiff, because it was the instigator of legislation having a different aim, would not be well-founded.

Plaintiff's counsel have supplied us with a copy of the transcript of the hearings before the Subcommittee of the Committee on the Judiciary, of the House of Representatives, which considered H.R. 3975 and amended it into the form in which it was passed. After the suggested amendments, which were, in substance, embodied in the amended bill, had been discussed, Mr. Bryson, the Chairman of the Subcommittee, said:

> "In other words, inherently, if this bill had been law as amended by your suggestion at the time of the hearing of the case in which Mr. Davies [1] seems to have been interested, there still could not have been a recovery?"

Mr. Rose, the witness to whom the question was addressed, responded:

> "There could have been a recovery in his case unless the Government could have shown that the invention related to the duties of the Government employee co-patentee or unless he was in a position at or about the time the invention was used to influence its use."

The question whether or not the facts of the plaintiff's case were such that the bill, if amended as proposed, would have benefited the plaintiff if it have been the law when the facts of the plaintiff's case occurred, was pursued no further in the committee hearing. The entire tone of the hearing was that of an effort to improve the law. One gets no impression from the transcript that anyone was thinking of making the proposed changes retroactive for the benefit of one or a number of persons who would have had rights if the changes in the law had been made earlier.

We think that no sufficient reason has been shown for departing from the normal standard of statutory interpretation, which treats new legislation as having only a prospective operation.

The plaintiff's petition will be dismissed. It is so ordered.

JONES, C. J., and HOWELL, WHITAKER and LITTLETON, JJ., concur.

---

1. Mr. Davies was one of the plaintiff's counsel in the earlier case in this court.